CASE 83—ACTION FOR SETTLEMENT OF ESTATE—MAY 30.

# Newcomb v. Newcomb.

APPEAL FROM HENDERSON CIRCUIT COURT.

REVERSED.

ALIENS—NATURALIZATION—RIGHTS OF BRITISH SUBJECTS—PROBATE OF WILLS IN FOREIGN COURTS.

Held: 1. Former citizens of the United States, who have by naturalization become British subjects, are, while domiciled in the United States, entitled by treaty to all the rights of native-born British subjects.

2. A certificate of naturalization purporting to have been signed by the clerk of a naturalization court of Canada, by virtue of which the person to whom it was issued claimed to be a British subject, and which was found among his papers after his death, was admissible, without further proof, to show that he was a British subject; but, if further proof was required, the deposition of the present clerk of the court, to the effect that the records show that the certificate was ordered to be granted, and that according to the invariable rule of the court the certificate would, as of course, be issued, was sufficient.

3. A paper purporting to be an original exemplification of the probate of a will in England, together with the deposition of the solicitor for the propounder, showing that the will was probated in the court which, according to the laws of Great Britain, had jurisdiction, was sufficient to show the admission of the will to probate in England; it appearing that the heir who is attacking the probate was served with summons in Kentucky pursuant to a rule of the English probate court, which had authority to make rules for the purpose of bringing non-residents before the court.

4. Where the will of a British subject, who was domiciled in the United States at the time of his death, is probated in England by a court having jurisdiction, such probate is conclusive as to the personal estate of the testator situated in England, and neither the validity of the will, nor the disposition of such estate, can be questioned in the courts of this country.

YEAMAN & LOCKETT ATTORNEYS FOR APPELLANT.

1. In July, 1890, E. B. Newcomb died in France but was domiciled in Henderson, Ky.

2. He left the appellee, W. S. Newcomb, the only child of his first wife, and the appellant, his widow and two children of the last marriage, B. B. and Mary Newcomb.

3. Part of his estate consisted of 1,227 hogsheads of tobacco then in Liverpool and London. It is the subject matter of this litigation.

4. He married appellant in 1864, in Canada. On December 14, 1865, he was naturalized as a British subject in Canada. *Ipso facto* Mrs. Newcomb became also a British subject. His first oath towards naturalization in this country does not alter the case. He died a British subject; and she remains one. White v. White, 2d Met., 188; U. S. Rev. Stat., sec. 2168.

5. He left a paper dated March 4, 1890, which was probated by the Henderson County Court, devising his entire estate to his widow. This paper was set aside on the ground of mental incapacity. 96 Ky., 120.

6. He left two other papers dated respectively, July 16, 1888, and March 1, 1890, which appellant afterwards presented in the alternative to the proper probate court in England, and upon actual notice to appellee, that of March 1, 1890, was probated as his will and the tobacco or its proceeds was turned over to her as executrix of that court's appointment. Both these papers were in effect the same as the one rejected in this State. That court had jurisdiction to probate the will, and under it she received the assets and owns them. See Hutchen's deposition and Acts of Parliament filed therewith.

7. The judgment of that court as to the property is *in rem* and binding everywhere. 2d Black on Judgments, secs. 635-8; Reid v. Reid 91 Ky., 267; Mitchell &c., v. Holder, 8 Bush, 364; Thos. v. Mahone, 9 Bush, 111; 1 Greenleaf, sec. 550; 12 Howard, 384-5; 3 J. J. M., 606-7-8.

8. To defend this suit to recover the proceeds of the tobacco, it was not necessary to have the will probated here. Section 4852 of our statute does not apply. Section 1638 is applicable, under which the copy of the will filed is duly authenticated. See, also, 1 Greenleaf, 501.

9. F. L. Hutchens, an English barrister, was competent to and does prove the English law, independent of the statute made part of his disposition. 1 Greenleaf, sec. 487, notes 2 and 3; Biesenthal v. Williams, 1 Duvall, 330; Kentucky Statutes sec. 1641.

10. The case of Barnes v. Brashear, 2 B. Monroe, 380 reviewed. It is not applicable. See *contra* Johnson v. Sevier's Ex'rs, 4 J. J. M., 141.

11. Every nation possesses exclusive sovereignty and jurisdiction within its own territory, and can regulate the manner in which

Newcomb v. Newcomb.

real and personal property within it may be held, transferred or *bequeathed*. No other nation has any right to regulate or control such property. Story's Conflict of Laws, secs. 18, 19 and 20; Neff v. Pennoyer, 5 Otto, 714; Williams v. Preston, 3 J. J. M., 606-7-8; Thos. v. Mahone, 9 Bush, 111.

T. L. EDELEN, ATTORNEY FOR APPELLANTS.

1. Chapters 114, 24-5 of Victoria, known as Lord Kingdown's Act, conferred upon British subjects domiciled abroad, the right to a probate of the will of such British subject when valid, according to the law of the testator's domicile.

2. The probate authorized by this act is an original and not an ancillary probate. The probate depends solely upon the act, and not upon the domicile of the testator. Rippon in Goods of, 3 S. & T., 177; (cited in Jacob Fisher's Digest, Col., 13698); Jarman on Wills, 5th ed., page —; Wililams on Exrs., page 309 of English paging.

3. E. B. Newcomb was a British subject and his certificate of naturalization, a photographic copy of which is before Your Honors, is conclusive that the preliminary steps necessary to its issual were in fact taken. Freeman on Judgments, sec. 607; State v. Penny, 11 Ark., 631; McGarthy v. Marsh, 5 N. Y., 263; State v. Holflinger, 35 Wis., 393; Sprat v. Sprat, 4 Peters, 393; Stark v. Ches. Insurance Co., 7 Cranch., 420; Bank v. Walker, 3 Barbour's Chan., 433; People v. McGowan, 44 Ill., 644; Van Fleet on Collateral Attack, secs. 550, 567; Richie v. Putnam, 13 Wend., 524; Snider v. Circuit Judge, 17 Mich., 68: People v. Snider, 41 N. Y., 408.

4. The original exemplification of probate which is before Your Honors, is proven strictly in accordance with the Kentucky Statutes. It is proven further by the testimony of Mr. Hutchins and of Mrs. Newcomb.

5. The English High Court of Justice, Probate Division, had jurisdiction of Wm. S. Newcomb, because the statutes conferred upon the court the right to make rules for bringing non-residents before the court, and the testimony of Mr. Hutchins shows that such a rule was made, and the pleadings show that a copy of the writ was in fact served upon Wm. S. Newcomb.

6. Whether the will was proved in solemn form or common form is immaterial.

7. The judgment of the English Court of Probate upon the validity of the will of March 1st, 1890, was a judgment *in rem*, and not subject to collateral attack. Fletcher's Adm'r. v. Sanders, 7 Dana, 345; *Adams v. Adams*, 11 Ben. Mon., 77; Marrett v. Babb's Ex'r., 91 Ky., 88; Dorsey v. Dorsey, 5 J. J. Mar., 280; Crain v.

Newcomb v. Newcomb.

Vincent, 17 Ky. Law Rep., 1026; Reed v. Reed, 91 Ky., 267; Kerr v. Moon, 9 Wheat., 965; Stacy v. Thrasher, 6 Howard, 44; Goodwin v. Jones, 3 Mass., 514; Goodall v. Marshall, 11 N. H., 88; Woerner's American Law of Administration, sec. 226; Black on Judgments, sec. 823; Van Fleet on Collateral Attack, 585; State v. McGlynn, 20 Cal., 233; Broderick's Will, 21 Wallace, 503; Berrett v. Vaughn, 5 Vermont, 333; Tompkins v. Tompkins, 1st Story, 547; McDermott v. Copeland, 9 Fed. Rep., 536.

8. Those cases in Kentucky which authorized the suing of a foreign administrator found in this State, with the assets in his possession, expressly limited a recovery to a recovery according to the law of the place of the appointment.     Manion's Adm'r. v. Titsworth, 18 B. Mon., 582; Dorsey v. Dorsey, 5 J. J. Mar., 280; Atchison's Heirs v. Lindsey, 6 Ben Mon., 86.

9. It is not necessary to probate the will in this State for Mrs. Newcomb to justify a retention of the assets when sued for their conversion. Moss v. Roland, 3 Bush, 505; Peterson v. Chemical Bank, 32 N. Y., 21; Trecothick v. Austin. 4 Mason, page 16.

10. The case of Williams v. Sanders, 5 Caldwell, 60, is not authority here against the distinction contended for, because in that case the personal representative was attempting to sue for assets in Tennessee.

S B. & R. D. VANCE, Attorneys for Appellee.

For appellee, a child and heir, it is maintained:

1. It not being shown, that, as claimed, E. B. Newcomb was a British subject, no validity can attach to the alleged English probate.     Kentucky Statutes, secs. 1638-1641: U. S. Revised Statutes, sec. 1674.

2. The judgment of probate of the alleged will, by the English court, is not authenticated or proved, so as to be competent evidence at common law, nor is it authenticated as required by the statute. 1 Greenleaf Ev., sec. 514; Church v. Hubbart, 2 Chanch:, 187, 238; 2 Freeman on Judgments, sec. 414; 2 Black on Judgments, sec. 849; Story's Con. of Laws, 8 Ed., sec. 645; Kentucky Statutes, sec. 1638; Faustre v. Com., 17 S. W., 189.

3. Probate in common form, is not allowed by the English statute, and for lack of the requisite, statutory process and service, the English court, not having jurisdiction of appellee, W. S. Newcomb, in the probate proceeding, the judgment thereon was void. 37 Victoria, chap. 66, pages 48-58; Galpin v. Page, 18 Wall, 354; Kerr v. Candy, 9 Bush, 372, 378; Gibhard v. Garnier, 12 Bush, 321, 324.

4. A foreign adm'r. is merely ancillary, and the deceased's move-

ables, whether he die testate or intestate, are to be distributed by the laws of his domicile at the time of his death, and the foreign personal representative, residing in the country of the domicile, will hold them subject to its laws. Dicey on Conflict of Law, pages 674-5, and notes 1-2, also pages 677-679 and 684, 691, 786, 787, 398, 399; Story's Conflict of Laws, secs. 380, 379; Dixon's Ex'rs. v. Ramsey's Ex'rs., 3 Cranch., 317; 2 Kent's Com., 429; Wilkins v. Ellet, Adm'r., 9 Wall, 740; Cranworth Ch. in Whicker v. Hume; 7 H. L. C., 124, 156, 157, cited in Dicey, 689-690.

5. A court of Kentucky, can not recognize an instrument as the will of one who died domiciled there, simply for its English probate. Kentucky Statutes, secs. 4849, 4852; Barnes' Adm'r. v. Brashear, 2 B. M., 380; Carmichael v. Elmendorf, 4 Bibb, 484; Williams v. Saunders, 5 Cold., 60.

6. It was a fraud upon the court of domicile, and upon the heirs of E. B. Newcomb, for the executor named therein, to withdraw his will from its jurisdiction for foreign probate, for which such foreign probate will be disregarded. Kentucky Statutes, 4849; Wood v. Wood, 78 Ky., 624.

7. The foreign executor, residing in the country of the domicile of the deceased, is answerable in its courts for the distributable surplus in his hands. Dorsey's Ex'rs. v. Dorsey's Adm'r., 5 J. J. Mar., 280; Atkinson's Heirs v. Lindsay, 6 B. Mon., 86; Meanion's Adm'rs. v. Titsworth, 18 B. M., 582, 597.

8. The title to the tobacco in Europe vested in appellant on her qualification as executrix in the Henderson County Court, and by virtue thereof as shown by her inventory, came to her possession, and she therefore holds its proceeds, subject to the law of the domicile, from whose court she received her authority. Estate of Washburn, 11 L. R. A., p. 41.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

In 1890 E. B. Newcomb died, domiciled in Henderson county, Ky. He left surviving him a widow, two children by her, and one son, the appellee herein, the offspring of a former marriage. At the time of his death he left three papers, each purporting to be his last will and testament. One was dated in July, 1888, one (in his own handwriting) was dated March 1, 1890, and the other was dated March 4, 1890. On the 25th day of August thereafter the Hender-

son County Court admitted to probate the 'will dated March
4, 1890, on motion of appellant, who was the principal de-
visee in each paper, and named as executrix thereof, and
she duly qualified as executrix.   Subsequently she return-
ed to the office of the clerk of the county court an inven-
tory of the estate of her husband, which came to her hands
as executrix, which was duly recorded therein.   An ap-
peal was taken by appellee, W. S. Newcomb, from the
judgment of the county court to the Henderson Circuit
Court; and upon a jury trial the judgment of the county
court was reversed,.and the instrument held not to be the
last will of E. B. Newcomb, deceased.    Mrs. Newcomb ap-
pealed to this court, and in an opinion rendered October
30, 1894, reported in 27 S. W., 997, the judgment of the
circuit court was affirmed.   The bulk of the 'estate left
by decedent consisted of 1,227 hogsheads of tobacco, which
were in the hands of commission merchants in London
and Liverpool, England, when E. B. Newcomb died.   Af-
ter the qualification of appellant as executrix of the will
of March 4, 1890, and before any appeal had been taken
from the probate thereof, she executed a power of attor-
ney authorizing one A. E. Gilliatt, who resided in England,
to have ancillary probate of the will taken there, and to
qualify thereunder in accordance with the English law,
which he did, and took possession, under the authority
thereby conferred, of all of the tobacco, sold it, paid the
outstanding charges against it, including taxes to the gov-
ernment, the debts of E. B. Newcomb to persons resid·
ing in England, and held the surplus subject to the order
of the court.   There also came to the hands of appellant,
under her appointment as executrix by the Henderson
County Court, something over $2,000 in cash.   After the
affirmance of the judgment of the circuit court by this

court in October, 1894, Mrs. Newcomb produced to the Henderson County Court, and offered for probate, the holographic will date March 1, 1890.  Appellee, W. S. Newcomb, suggested to the court that the will dated July, 1888, was also in the possession of appellant; and upon his motion a rule was awarded against her to produce that paper, which she did, and offered both of these wills for probate in the alternative.  Before the county court had determined the question as to the last wills offered for probate, Mrs. Newcomb, being the sole beneficiary therein, with the consent of contestant abandoned her motion to probate either of these wills in the Henderson County Court, and withdraw them therefrom.  She subsequently took these two papers to England, and offered them for probate in the alternative in the probate division of the high court of justice of England; and that court decided that the paper of March 1, 1890, was the true will of decedent, and entered a judgment accordingly on the 22d day of August, 1895, at the same time revoking the ancillary probate theretofore granted of the will of March 4, 1890,  Appellant was also permitted to qualify as executrix thereof, and an order was entered directing A. E. Gilliatt to turn over to her, as such executrix, the net assets of the estate held by him under the ancillary probate of the will of March 4, 1890, which is shown by the evidence herein to have been $58,398.  After the affirmance by this court of the judgment of the circuit court rejecting the paper of March 4, 1890, as the last will of deceased, the Ohio Valley Banking & Trust Company was appointed, by an order of the Henderson County Court, administrator of the estate of E. B. Newcomb, deceased, and duly qualified thereunder.  And subsequently, on the 14th day of August, 1895, appellee in-

stituted this suit in the Henderson Circuit Court for a settlement of the estate of E. B. Newcomb, deceased, against the Ohio Valley Banking & Trust Company, administrator, and also made Mary Newcomb and her children, Mary and David B. Newcomb, defendants. He asked that Mrs. Newcomb should be required to account for the money in her hands arising from the proceeds of the tobacco, which had been sold in England which he alleged amounted to the sum of $180,000. The trust company, as administrator, answered and united in the prayer of plaintiff's petition, making its answer a cross petition, in which it also sought to recover from Mrs. Newcomb the proceeds of the same tobacco.

Mrs. Newcomb, in her answer, both to the original and amended petitions of W. S. Newcomb and the cross petition of the trust company, sets out in detail all of the facts heretofore stated as to the character of the estate left by E. B. Newcomb, its location at the time of his death, the probate of his will in the Henderson County Court, the subsequent ancillary probate thereof in England, and qualifications of Gilliatt thereunder, and, by way of further defense, answered that at the time of the death of E. B. Newcomb he was a British subject; that in the year 1862, being then a citizen of the United States, residing in the Dominion of Canada, he made application for naturalization in accordance with the laws of said dominion, and that thereafter, on the 24th day of December, 1865, his application was granted, and a certificate to that effect delivered to him; that he then and there took the oath of allegiance to Her Majesty, Queen Victoria, required by law, and remained a British subject until the time of his death. She further alleged that at the time of his naturalization as a British subject, and continuously since that time, the

laws of Great Britain provided, and have provided, that "every will and other testamentary instrument made out of the United Kingdom by a British subject, whatever might be the domicile of such person at the time of making the same, or at the time of his or her death, should, as regards personal estate situated in the territorial limits of Great Britain, be held to be well executed for the purpose of being admitted in England and Ireland to probate and in Scotland to confirmation, and to pass title to the property if the same were made according to the forms required either by the law of the place where the same was made or by the laws of the place where such person was domiciled when the same was made," and, further, that "the laws of Great Britain at the time of the death of E. B. Newcomb provided, and have continuously since provided, that Her Majesty's high court of justice, probate division, in England, should have jurisdiction to grant original or ancillary probate of any will or other testamentary paper disposing of personal assets and effects within the territorial limits of England; . . . that at the time she intermarried with E. B. Newcomb, in 1864, in the Dominion of Canada, and continuously since that time, the laws of Great Britain provided, and have provided, that any foreign woman married, or who should be afterwards married, to a natural born or naturalized subject of her Britannic majesty, Queen Victoria, should be deemed and taken to be herself naturalized, and to have all the rights and privileges of a natural born subject; that at the time of her marriage she was a citizen of the United States, and that by the laws of the United States, and the treaties made pursuant to the Constitution thereof, and especially of the treaty of the United States and Great Britain, which became a law on the 16th

day of September, 1870, she became entitled, by virtue of
the facts hereinbefore recited, to have the will of her
husband probated in the probate court of Great Britain,
and to administer the assets of the estate of E. B. New-
comb; and that the will of her husband, legally probated
there, can not be attacked in the courts of the United
States."

Appellee, for reply to the answer of appellant, Mary
Newcomb, to his original and amended petitions, denies
that at the time of his death E. B. Newcomb was a British
subject, and avers that he was during his life and at his
decease a citizen of the United States, and of the State
of Kentucky, denies all of the averments as to his natural-
ization, as to his British citizenship and that of the defend-
ant, Mary Newcomb, and as to the English probate of the
will of March 1, 1890, and avers that, if so probated, such
probate does not supersede the necessity of the probate
required by the law of Kentucky, the place of his and her
domicile, and was in fraud of the jurisdiction of the
courts of this State, and therefore void; alleges that the
title to the tobacco in Europe vested in appellant on her
qualification as executrix in the Henderson county court,
and by virtue thereof, and that she therefore holds its
proceeds subject to the law of the domicile from whose
court she received her authority; that the foreign pro-
bation is merely ancillary, and that the personal estate
of decedent must be distributed according to the laws of
his domicile at the time of his death; and that the foreign
personal representative, residing in the county of his dom-
icile, will hold it subject to the laws thereof.

The pleadings being made up, and proof taken, judg-
ment was rendered against Mrs. Newcomb for two-ninths

of the net amount of the English assets, in favor of appellee, and from that judgment she has appealed.

The claim that E. B. Newcomb was a British subject, and was therefore entitled to have his will probated in the English court, and his personal estate in Great Britain administered by the executrix appointed there, is the foundation of the defense relied on in this proceeding, and will be first considered. "The doctrine of perpetual allegiance was one of the settled principles of the English common law, and was maintained in the United States by high authorities during the earlier period of our Federal history." See 2 Kent, Comm., 49; 3 Story, Const., 3; Whart. Stat. Tr., 654; Whart. Confl. Laws, section 5; Lawr. Wheat. (Ed. 1863) 995. It was asserted by Great Britain as a basis for the claim to impress all native Britons in foreign ships. Lord Grenville, in writing to the American Secretary of State (Mr. King) March 27, 1797, said: "No British subject can, by such a form or renunciation as that which is prescribed in the American law of naturalization, divest himself of his allegiance to his sovereign. Such a declaration of renunciation made by any of the King's subjects would, instead of operating as a protection to them, be considered an act highly criminal on their part." See 2 Am. St. Papers, 149. But the right of expatriation has been most vigorously asserted by the government of the United States for many years, and the Congress of the United States, by an act adopted July 27, 1868, declared that "the right of expatriation is a natural and inherent right of all people, indispensable to the enjoyment of the right of life, liberty, and the pursuit of happiness," and prescribes "that any declaration, instruction, opinion, order or decision of any officer of this government which denies, restricts, impairs, or questions the

right of expatriation is hereby declared inconsistent with the fundamental principles of this government." See Rev. St., section 1999. And treaties recognizing the right of expatriation were executed, with various modifications in detail, with most of the governments of Europe. The negotiations with England were very protracted, but were at last closed by the adoption by the imperial parliament on May 14, 1870, of an act by which it is declared "that any British subject who has, at any time before, or may at any time after, the passing of this act, when in any foreign State, and not under any disability, voluntarily become naturalized in such State, shall from and after the time of his having become so naturalized in such foreign State, be deemed to have ceased to be a British and be regarded as an alien." One of the articles of this treaty so made with Great Britain was in this language: "Citizens of the United States who have become or shall become and are naturalized according to the law within the British dominion as British subjects shall, subject to the provisions of article 2, be held by the United States to be in all respects and for all purposes British subjects, and shall be treated as such by the United States. Reciprocally, "British subjects who have become or shall become and are naturalized according to law within the States of America, as citizens thereof shall, subject to the provisions of article 2, be held by Great Britain to be in all respects and for all purposes citizens of the United States, and shall be treated as such by Great Britain." By this treaty the United States bound itself to guaranty to British subjects domiciled in the United States all rights belonging to them as British subjects, whether they were born such, or became so by naturalization. On the

6th day of August, 1861, previous to the alleged applica.
tion of E. B. Newcomb for naturalization as a British sub-
ject, the British parliament, by an act to amend the law
with respect to wills of personal estates made by British
subjects, provided, in the first section of the act, that
"every will and every other testamentary paper made out
of the United Kingdom of a British subject, whatever may
be the domicile of such person at the time of making
the same, or at the time of his or her death, shall as re-
gards personal estate, be held to be well executed for the
purpose of being admitted in England and Ireland to pro-
bate, and in Scotland to confirmation, if the same be made
according to the forms required either by the law of the
place where such person was domiciled when same was
made, or by the laws then in force in any part of Her Ma-
jesty's dominions, where he had his domiciles of origin."
And it is evident that, if E. B. Newcomb was a British
subject at the date of the execution of the will in contest
and at his death, he was, by virtue of the treaty made by
the United States, with Great Britain, and under the pro-
vision of the English statute of wills of personal proper-
ty made by British subjects, quoted *supra*, entitled to have
his will admitted to probate in England, if such will was
valid, either by the English law, or by the law of the place
where the testator had his domicile, no matter where such
domicile was.

In support of the claim that E. B. Newcomb was a natur-
alized British subject, there is filed in the record the orig-
inal certificate of naturalization, signed by the clerk of the
naturalization court of the county of Lincoln and prov-
ince of Canada, and dated the 14th day of December, 1865.
It is in due form of law, and is shown by the evidence to
have been found among the papers of deceased; and it is

further shown that by virtue of that naturalization he always claimed to be a British subject, and never voted, sat on juries, or performed any of those duties which the subject owes to the State, during his subsequent domicile in Kentucky. And the law is well settled that a paper of this character can only be impeached by showing that the court which granted it was without jurisdiction, or that fraud consisting of intentional or dishonest misrepresentation or suppression of material facts by the party obtaining the judgment was practiced upon it, or that the naturalization was granted in violation of a treaty stipulation or of a rule of international law. See 2 Whart. Int. Law, section 174. The certificate of naturalization was admissible as evidence without further proof, but in support of its genuineness appellant had filed the deposition of the present clerk of the court which granted the certificate, who is the successor in office of the clerk who signed the certificate of naturalization relied on, and the custodian of the records of the said office, and who certifies that he finds in the minute or session book of the court for the year 1865 that on the 12th day of December of that year the following entry was made by the clerk of the court, viz: "Certificates of naturalization of Eleazor B. Newcomb read,"—and that on the 14th day of the same month, being the last day of the general sessions of the peace, there is entered of record in the said session book the following, viz: "Certificate of naturalization of Eleazer B. Newcomb ordered to be granted;" and he further certifies that, according to the invariable rule of said court, the certificate of naturalization would, as of course, be issued to the said Newcomb, in pursuance of the act respecting the naturalization of aliens then in force in the Dominion of Canada. This deposition is certified to by the

consular agent of the United States, and it seems to us suf-
ficient to establish the claim that decedent was a British
subject.

Appellant produced on the trial of this case in the court
below a paper which purported on its face to be an original
exemplification of the probate of the will in England,
wherein it is recited that:

"It appearing that on the 22nd day of August, 1895, the
last will and testament of Eleazer Burbank Newcomb, late
of the city of Henderson, in the State of Kentucky, in
the United States of America, tobacco merchant, deceased,
who died at No. 1, Rue Lincoln Champs Elysees, Paris,
in France, on the 18th day of July, 1890, was proved in
the said high court of justice by Mary Newcomb, widow,
the relict, the sole executrix named in the said will; the
right honorable, the president of the probate, divorce, and
admiralty division of the said court, having on the 18th
day of August, 1895, in a certain action entitled 'Newcomb
vs. Newcomb,' pronounced for the force and validity of the
said will, and which probate now remains of record in the
said registry. The true tenor of the said will is in the follow-
ing words, to-wit:   [Here the will is copied, and it is fur-
ther recited:]   In faith and testimony whereof these let-
ters testimonial are issued.   Given at London, as to the
time of the aforesaid search and the sealing of these pres-
ents, this nineteenth day of December in the year of our
Lord 1895.   [Signed] D. H. Owen, Registrar.

"I, the Right Honorable Sir Francis Henry Jeane, knight,
president of the probate, divorce, and admiralty division
of Her Majesty's high court of justice, hereby
certify that the will, a copy whereof is contained
in the within exemplification, appears to have
been duly proved, and the probate thereof to be in force,

and that the attestation of David Henry Owen, esquire, has been duly made, with the seal of office annexed, by the said David Henry Owen, who is one of the registrars of the principal probate registry of the said high court of justice, having power to receive the original will and to grant probate thereof. As witness my hand this 20th day of December, 1895. [Signed] F. H. Jeane."

And this certificate was certified, as provided by the Kentucky Statutes, over the signature and seal of Patrick Collins, Consulate General of the United States at London.

The deposition of Mr. Hutchins, who was a solicitor for Mrs. Newcomb, shows that the will was offered for probate in the court which, according to the laws of Great Britain, had jurisdiction. It also appears that W. S. Newcomb was before the court at the time of the probate, by writ of summons served upon him in Henderson, Ky., by Judge Yeaman; that the English probate court had authority to make rules for the purpose of bringing non-residents before the court; and that the service upon W. S. Newcomb was pursuant to such rules. We are therefore of the opinion that the evidence as to the admission by the English court of the will of E. B. Newcomb to probate therein is sufficient to show such fact, and authorized the introduction of the exemplification of such probate as evidence in the trial of this proceeding.

And this brings us to the consideration of the last question involved in this litigation; i. e. the effect which must be given in courts of this State to the will of a British subject, disposing of personal property in England, which has been duly admitted to probate in the courts of that country, but who at the time of the execution of the paper was domiciled in this State.

It seems to be the well-settled law that settlement of es-

tates is governed by the law of the State or country where the property is situated, and from whence the fiduciary derives his authority to take possession and control of the property; and the personal assets of a decedent have a situs for the purpose of administration entirely distinct from the domicile of the decedent, except when necessary to pay debts. See Story, Confl. Laws, section 422, and numerous authorities there cited. It will be conceded that the law of the domicile of a decedent must govern in the distribution of personal estate among his heirs, and that this distribution is to be made under the authority of the court within whose jurisdiction the decedent had his domicile, in cases of intestacy. The *sitac rei* as well as the presence of the parties confer jurisdiction to decree distribution according to the law of the domcile, and such a jursdiction is not inconsistent with international policy; but it seems to us that this doctrine can have no application under the facts of this case, where there are no creditors complaining, and where a will disposing of the personalty within the foreign jurisdiction has been duly admitted to probate. This seems to be the view generally taken by the Kentucky decisions to which our attention has been called, and the Federal authorities seem to be of the same tenor. In the case of Kerr v. Moon, 9 Wheat. 565, 6 L. Ed., 161, the court said: "But, could it even be conceded that this was personal property, it would still be property within the State of Ohio; and we hold it to be perfectly clear that a person claiming under a will proved in one State can not intermeddle with or sue for the effects of a testator in another State, unless the will be proved in that other State, or unless he be permitted to do so by some law of that State." In Stacy v. Thrasher, 6 How. 44, 12 L. Ed., 337, the court said: "It follows as

a necessary inference from these well-established princi-
ples 'that, where administrations are granted to different
persons in different States, they are so far deemed inde-
pendent of each other that a judgment obtained against one
will furnish no right of action against the other, to affect
assets received by the latter in virtue of his own adminis-
tration; for, in contemplation of law, there is no privity
between him and the other administrator, "—citing Story,
Confl. Laws, section 522.   In Reed v. Reed, 91 Ky., 267,
(15 S. W., 525,) (11 L. R. A., 513,) this court said: "The
probate of a will is an *ex parte* proceeding, and essentially
one *in rem*.   It determines the status of the property.   The
order of probate, while it remains in force and not super-
seded, is binding not only upon the interested parties, but
it is valid to all the world."   In Mitchell v. Holder, 8 Bush,
362, it was said: "It has been repeatedly held that pro-
bate or rejection of a will by a proper court, having the
case regularly before it, was like a sentence *in rem*,—con-
clusive while it remained in force in the same and all
other courts, and between all persons, whether formal par-
ties to the record or not."   In 21 Wall., 503, 22 L. Ed.,
599, in the Broderick Will Case, which came up from Cal-
ifornia, the supreme court of that State, in an elaborate
opinion delivered by Judge Norton, said: "Upon examin-
ing the decisions of the supreme court of the United States
and of the courts of the several States, it will be found
that they have uniformly held that the principles estab-
lished in England apply and govern cases arising under
the probate laws of this country, and that in the United
States, wherever the power to probate a will is given to a
probate court, the decree of such court is final and con-
clusive, and not subject, except on appeal to a higher court,
to be questioned in any other court."   We have been cited.

to a large number of other cases which, in effect, hold the same doctrine; and as the English court had jurisdiction, under Act 24 & 25 Vict., to grant probate of the will of E. B. Newcomb, all the personalty belonging to his estate then situate in England vested in the executrix for administration under the English law, and her liability as executrix can only be tested by that law.

But it is insisted for appellee that, even if it be conceded that the English court had jurisdiction to probate the will, such foreign probate is only ancillary, and, after the payment of all debts and other claims provable against the estate in England, the personal representative of the deceased, under the law of Victoria, must hand over the distributable residue to the personal representative of the deceased, under the law of his domicile, and leave to such representative the distribution thereof among the beneficiaries, and that all persons who claim a share in the decedent's estate may enforce their claims before the tribunals of his domicile; citing Dicey, Confl. Laws, in support of this contention. The effect of such a construction as this would be to ignore the disposition made by testator of his property. While it is conceded that the will of testator is entitled to probate in the English court for the purpose of disposing of personal estate located in England, it necessarily follows that such property must go and be disposed of in accordance with the terms of the will itself, and can not again be the subject of litigation or adjudication in the courts of the domicile. In Re Rippon, 3 Swab. & T., 177, cited in Jac. Fish. Dig. col 13,698, it was held that where a British subject died abroad, leaving a will executed in England, it was immaterial to consider whether he had or had not acquired a foreign domicile. In Jarm. Wills (5th Ed.) the author says that the act to amend the

law with respect to wills of personal estate made by British subjects was passed to obviate the question arising between an original and an ancillary probate; that it affects British subjects only, and can only be enforced where the property in question is locally situate within British jurisdiction; that foreign courts are not bound to recognize the act in determining whether a given instrument is a valid will of personal property within their own jurisdiction, and thus the personal property, British and foreign, of the British subject may be distributable according to two distinct laws.   When it has been determined that the English court has, by virtue of the English law, jurisdiction to probate the will of a British subject as to personal estate located in England, without regard to the place of his domicile, it is a necessary sequence that neither the validity of such will, nor the disposition of personal estate located in England, covered by it, can be assailed in the courts of this country.   For the reasons indicated herein, the judgment appealed from is reversed, with instructions to the lower court to dismiss the amended petition of W. S. Newcomb, and for other proceedings consistent herewith.