## Follweiler and Wife *versus* Lutz et al.

1. Residence is determined by a consideration of acts and intentions combined.

2. Hindman's Appeal, 4 Norris, 466, followed.

3. Where the boundary line between two counties passes through the dwelling house of a person, evidence is admissible to show, by his acts, declarations and intentions, in which county he elected to fix and maintain his residence.

February 15th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term, 1886.

Ejectment by Jesse Follweiler and wife against Michael Lutz and wife and Amandes Shellhammer, a tenant in possession under Lutz and wife.

The following facts appeared on the trial of the case before Albright, P. J.:

The land in controversy is a tract of about four acres in Lynn township, Lehigh county, the northern boundary of the tract being the county line between Lehigh and Schuylkill counties. The plaintiffs claimed title as follows: On October 27th, 1879, Jesse Follweiler obtained judgment in the Common Pleas of Lehigh county against David W. Follweiler. Upon this judgment execution was issued, the premises in question condemned, and upon a *vend. ex.* sold to Rebecca Follweiler, the present plaintiff, and deed acknowledged to her by Thomas B. Morgan, sheriff of Lehigh county, on November 17th, 1881.

The title of the defendants below arose as follows:

On October 12th, 1874, David W. Follweiler above mentioned, being the owner of 195 acres of land, partly in Lehigh and partly in Schuylkill county, made an assignment for the benefit of his creditors to one C. D. Frederitza.

This assignment was recorded in Schuylkill county but never in Lehigh.

C. D. Frederitza having died, the Court of Common Pleas of Schuylkill county, upon petition, appointed one Alvin F. Creitz of Lehigh county in his stead, on December 30th, 1878.

By deed of June 9th, 1879, A. F. Creitz conveyed the lands in Schuylkill county, as well as Lehigh county land in controversy, unto Mary Lutz, the defendant in this case.

The plaintiffs in error contended that at the time of the

assignment for creditors David W. Follweiler, the assignor, resided in Lehigh county, and as the assignment was never recorded in Lehigh county it was void as to the assignors' creditors, and Jesse Follweiler, one of these creditors, could proceed upon his judgment in that county to sell the land in controversy.

The Act of Assembly of March 24th, 1818 (Purd., p. 92, pl. 7), reads as follows: "All assignments so as aforesaid to be made and executed which shall not be recorded in the office for the recording of deeds in the county in which such assignor resides, within thirty days after the execution thereof, shall be considered null and void as against any of the creditors of the said assignor."

The defendants in error insisted that at the time of the assignment the assignor was a resident of Schuylkill county.

This was the only issue presented to the court below, it being conceded that upon its determination the verdict must turn.

In 1869 or 1870 David W. Follweiler built the house—hotel in which he lived with his family from that time continuously to 1879. This hotel was located on the tract of land in controversy, and either upon or close to the county line between Lehigh and Schuylkill.

John F. Stoudt, county surveyor of Schuylkill, testified on behalf of the plaintiffs in error that the county line ran north of the hotel, and that the other building was in Lehigh county. The court charged the jury that if this was the fact their verdict must be for the plaintiffs.

The defendants called the county surveyor of Lehigh and his assistant, who testified that they had made a recent survey of the county line, and that it cut a small part of the hotel in Schuylkill county.

The hotel was a large frame building, some 52 feet front and 30 feet deep, the northern end or side of which was toward Schuylkill county. The defendants' witnesses testified that the building line cut into Schuylkill county, a narrow strip along the north end of the building—to wit: a strip 4 feet 9 inches wide in front, and widening out to 5 feet 10 inches in the rear. This strip of two rooms, about 5 feet wide, was the only part of the building in Schuylkill county. There were no doors in that county. The remainder of the house, 50 feet front, all the halls and rooms except the narrow slice off the northern rooms, were in Lehigh county.

The ground plan of the hotel will be found on page 109:

[Follweilèr *v.* Lutz.] ;

NORTH.

SCHUYLKILL COUNTY.

LEHIGH COUNTY.

SOUTH.

During the trial the defendants made the following offer of evidence:

Jesse Follweiler being upon the witness stand defendants' counsel proposed to ask him the following question:

" Where did he (the assignor) get his license when he kept this hotel?

" Objected to as incompetent and irrelevant, and because it is not the best evidence of the granting of a license by a court; because it is not proposed to follow the evidence by proof that

[Follweiler *v.* Lutz.]

David Follweiler did actually, as a matter of fact, reside in Schuylkill county, or that he had any business there, or that there was any evidence of actual residence or settlement in Schuykill county, except such as may be inferred from the fact that a narrow strip of this house in which he lived was over the Schuylkill county line.

" By the Court: The evidence so far shows that the line separating Lehigh and Schuylkill counties passed through the house which was kept by David W. Follweiler from 1870 to a period after the time of making the assignment. Therefore it would seem that his residence at the time of making the assignment was equivocal; and in the opinion of the court his intention in respect to his residence in the one or the other county is material. The objection is overruled and a bill sealed for the plaintiffs. (Sixth assignment of error.)

" Defendants propose to prove that the witness was a clerk at an election about the year 1870, and subsequent to that time that he oftentimes saw David W. Follweiler vote in Schuylkill county, for the purpose of showing the intention of the party as to his residence.

" Objected to as incompetent and irrelevant, because the intention of a party does not fix his residence except as it may bear upon the effect to be given to the fact that he has actually located in a district. The mere fact that a man votes in a district is not legally competent evidence that is his residence.

" The Court: Inasmuch as it has been shown that the county line passed through the house where the assignor lived, the question of what he regarded his residence may be material. The objection is overruled and a bill sealed for the plaintiffs. (Seventh assignment of error.)

The plaintiffs presented the following points:

*First.*—Under all the evidence the verdict should be in favor of the plaintiffs.

*Answer.*—Negatived. (Third assignment of error.)

*Second.*—If the jury believe the evidence of Alvin Creitz as to the location of the house with reference to the county line, then your verdict should be in favor of the plaintiffs.

*Answer.*—Negatived. (Fourth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

The contest here, as you have observed, is whether David Follweiler, at the time he made the assignment, was a resident of Schuylkill county or a resident of Lehigh county. If he was a resident of Schuylkill county, then inasmuch as the deed was not recorded in Lehigh county, a judgment entered in Lehigh county at the time the Jesse Follweiler judgment

[Follweiler *v.* Lutz.]

was entered would have become a lien on the land in Lehigh county, and any one taking under that judgment would take a good title.

[It is admitted that Rebecca Follweiler, who bought at the sheriff's sale, knew that the assignment had been made, and that these four acres were included in the assignment. It is admitted also that at the time of the sheriff's sale notice was given by Mrs. Lutz that she had bought the property. It is also admitted that Mrs. Follweiler bought the title she now has with notice that Mrs. Lutz had it by virtue of her deed from the assignees. The law says where a party thus has notice she cannot complain that the deed is not recorded, because the object of putting a deed on record is to give notice to the public that somebody else has a title, and where a party had actual notice of the other deed though not recorded, the law places him or her in the same position as if the deed had been recorded. In order to simplify this case, the plaintiffs very sensibly admitted that they had notice. They are therefore in the same position as if the deed had been recorded in Lehigh county. The only question that then remains, as it seems to me now, and the main controversy in this case, is as to whether at the time the assignment was made, October 10th, 1874, David W. Follweiler, the assignor, was a resident of Schuylkill county or not. If he was a resident of Lehigh county then the deed of assignment was not recorded in the county in which the assignor resided, and it was void as to the creditors, and the plaintiffs are entitled to recover so far as this branch of the inquiry is concerned.] (Fifth assignment of error.)

Several surveyors have testified as to where the line separating Schuylkill and Lehigh is, in reference to the dwelling house on the tract of land which David Follweiler owned. You no doubt understood that on the Schuylkill side the township is " West Penn," and on the Lehigh side the township is called " Lynn." The tract of land containing 195 acres, it seems, is situated on top of the Blue Mountains. On the top, or somewhere near the top, the county line runs between these two counties. One of the surveyors, Mr. Stoudt, testified that he run this line, and he described to you how and where he run it, and what land marks he found. He testified that he found the county line to be north of the house in which David Follweiler lived. You will remember that the witnesses agree in saying that there was a house on this property, which at one time was used as a hotel; that it was built about the year 1869 or 1870, and that David Follweiler lived in it from 1870 to 1879, living in it in 1874. Mr. Stoudt says the county line ran north of this house, placing the whole of

the dwelling house in Lehigh county, and ran through the barn, which is situated further to the north than the house.' Are you satisfied from his testimony that the line as he ascertained it is the correct line? If it is, then David Follweiler at the time he made the assignment resided in Lehigh county, and then the assignment, not being recorded in Lehigh, would be void as to the plaintiffs, if Jesse Follweiler was a creditor in 1874. Then, without further inquiry, you will find in favor of the plaintiffs.

['Squire Creitz, another surveyor, says he run the line with 'Squire Weiss, who was also a surveyor, and both of them have told you what land marks they found, and how they run this line. If I am not wrong, 'Squire Weiss agrees with 'Squire Creitz in this, that they found the county line ran through this house in which David Follweiler lived at the time he made this assignment, cutting the larger part of the house into Lehigh county. What weight do you attach to their testimony? Do you believe that that is the line rather than that which Stoudt says is the line? If you find the line as stated by Creitz and Weiss to be the correct line, you have the fact that the house in which David Follweiler lived at the time of the assignment was on the line, and then another question will arise.

We have not been informed as to how David Follweiler occupied this house. It was said that he kept a hotel, and that the north end of the house, the end towards Schuylkill county, was divided into two rooms, one in front, and one in the rear, and that the front room was used as a bar room while the hotel was kept, and that the door into that room was on the Lehigh county side. How the other rooms were used we do not know, nor where David Follweiler ate or slept. We have the bare question of an assignor, if you take that to be the true line, living on the county line and recording the deed in one of the counties, and the county in which the smallest portion of the house was located. This presents a question of some difficulty in the opinion of the court. The first impression would be to say that where a house is located on the county line, and the man occupying makes an assignment for the benefit of his creditors, the deed must be recorded in both counties in order to be valid. That view, in my opinion, would be untenable, because that would be legislating; that would be adding by the court to the provisions of the legislature in reference to this subject.

Another view which is most strenuously urged by the plaintiffs is, that because the portion of this house in the county of Schuylkill is so small, it must be said as a matter of law that the recording in Schuylkill county was ineffective,

[Follweiler v. Lutz.]

and that taking the line as Creitz gives it, we must assume that David Follweiler was a resident of Lehigh county. I cannot assent to that, gentlemen. In my opinion, where the dwelling house of a party owning real estate and making an assignment, is located on the county line, his residence is ambiguous, uncertain and doubtful; and either for the purpose of the Act of Assembly referring to assignments, and for some other legal purposes, in my opinion he may determine and elect in which of the districts his residence shall be. It is not simply a matter of intention, undivulged, but acts done by the assignor, which demonstrate unmistakably in which of the two counties he regarded himself as a resident. We cannot say to you that you are to regard David Follweiler, at the time he made this assignment, as having been a resident of one county or the other. If you find his house was on the line, you may regard that he had the right to elect in which county he would be treated and regarded as a resident.] (First assignment of error.)

When I say he might elect, I do not mean simply that he might choose and do nothing in consequence of it, but if it is proved unmistakably that he regarded and held himself out as a resident of 'the county of Schuylkill, and acted upon it, you will find that he was a resident of the county of Schuylkill, in which event the defendants would be entitled to your verdict.

[It has been said in your hearing that it is proved David Follweiler obtained a license from the court of Schuylkill county, and that a hotel was kept by him. Whether that is distinctly proved I do not recollect. The testimony on that point is for you. Witnesses testified that he voted repeatedly in West Penn. township, Schuylkill county, before 1874, and while he lived in this new house. If you find that the line is not the line as testified to by Stoudt, but the line is that which Creitz testified to and passed through the house, and if David Follweiler, by his acts demonstrated that he regarded and treated himself as a resident of West Penn township, Schuylkill county, at the time of the assignment, you may find that the assignment was recorded as required by law and find in favor of the defendants. If you find the line as testified to by Mr. Stoudt to be the true line, then Mr. Follweiler undoubtedly lived in Lynn township, in which event the plaintiffs are entitled to a verdict, provided it is found that Jesse Follweiler was a creditor in 1874 when this assignment was made. If you find in favor of the plaintiffs, you will describe the tract of land, which description can be taken when you bring in your verdict. If you find in favor of the defendants

2 AMERMAN—8

you will simply say, " We find in favor of defendants."]
(Second assignment of error.)

· Verdict for the defendants and judgment thereon ; where-
upon the plaintiffs took this writ assigning for error the ad-
mission of the defendants' evidence above shown, the answer
of the court to the plaintiffs' points and those portions of the
general charge included in brackets.

*R. E. Wright, Jr.* (with whom were the *Sons* of the firm of
*R. E. Wright, Jr., & Sons* and *Even Holben*), for plaintiffs in
error.—What is a man's residence or domicile ? Justice STORY,
in his commentaries on the Conflict of Laws, Sec. 41, declares
that " by the term domicile in its ordinary acceptation is
meant the place where a man lives or has his home. In a
strict legal sense that is properly the domicile of a person
where he has his true, fixed, permanent home and principal
establishment, and to which whenever he is absent he has
the intention of returning."

· " Two things," he says, " must concur to constitute domicile.
First, residence ; and secondly the intention of making it the
home of the party. There must be the fact and the intent ;
for as Pothier has truly observed, a person cannot establish a
domicile in a place except it be *animo et facto*."

In Fry's Election Case, 21 P. F. S., 309, this court adopted
this language as a correct statement of the rule of law.

In Carey's Appeal, 25 P. F. S., 201, it was held that " the
domicile is where a person has fixed his habitation without a
present intention to remove from it.

" To constitute domicile there must be both residence and an
intention to make the place of residence the home of the party.

" *Prima facie* the residence is the domicile.

" The intention formed and announced to change a domicile
will not avail unless there be an actual change of habitation " :
Malone *v.* Lindley, 1 Legal Intelligencer, 82.

" Residence is a question made up of fact and intention " :
Hindman's Appeal, 4 Norris, 466.

" In this country a person's domicile is that place in which
he has fixed his habitation, without any present intention of
removing therefrom."

· " The residence in a county necessary to establish a settle-
ment therein must be a personal presence in a fixed abode, or
of a character indicating permanency of occupation " : Cerro
Gordo County *v.* Wright County, 50 Iowa, 439.

" The intent and facts should concur in order to establish
the domicile of a person who removes from one state to an-
other ; and on his return to his native state, after an absence
therefrom to avoid a draft during a civil war, he will be pre-

[Follweiler *v.* Lutz.]

sumed to intend making it his domicile": 1871, Kellar *v.* Baird, 5 Heisk, Tenn., 39.

" Where a party abandons the domicile of origin in fact, and with a present intention to acquire a new one, if he dies *in itinere,* and before he has consummated that intention by an actual residence, the domicile of origin immediately reverts and re-attaches": Smith *v.* Croom, 71 Fla., 81.

" Two things must concur to constitute a domicile; first, residence; and, secondly, the intention to make it a home; and if these two concur, it makes no difference how short the party's residence may be in the new domicile": Horne *v.* Horne, 9 Ired, N. C., 99.

" The rule that a domicile once established may be maintained without the concurring bodily presence, if the intention continues unchanged through all temporary absences, does not apply at the outset": Fayette *v.* Livermore, 62 Me., 229.

" In order to acquire a domicile, there must be actual residence in the place chosen, which must be the principal and permanent residence of the party": Id.

" But the mere declaration of intention to change a domicile without an actual change of residence is inoperative to create a new domicile": Brown *v.* Smith, 15 Beav., 444; 21 L. J., Chanc., 350.

" A person legally capable of choosing or changing his domicile, who is residing in a city or town in this commonwealth with the purpose of there remaining for an indefinite time, and without retaining and keeping up any intention to return to his former home in another city or town in this commonwealth, has his domicile in the place of his actual residence": Wilbraham *v.* Ludlow, 99 Mass., 587, 1868.

" A new domicile cannot be acquired unless by a concurrence of intention and act. The mere possession of real estate not coupled with residence is of no value with reference to domicile": Id.; Forbes *v.* Forbes, American Law Register, O. S. 3, 255.

*Dewalt (Henninger* with him), for defendants in error.— Where did David Follweiler reside when he made the assignment? In answering this we would first say, that the facts that he, in the deed of assignment, describes himself as a resident of Schuylkill county, and that all the proceedings in the trust were in those courts, are in themselves *prima facie* evidence that he did live there, and of the regularity of the proceedings, and must be overcome by the weight of testimony on the part of him who disputes the fact. But we are not without authority to sustain the position taken by the court below. In Story on Conflict of Laws, 8th ed., § 44, we find

the following: " Two things must then concur to constitute domicile: first, residence; secondly, the intention of making it the home of the party. There must be the fact and the intent."

In § 45 the author says: " It is sometimes a matter of no small difficulty to decide in what place a person has his true or proper domicile, his residence is often of a very equivocal nature, and his intention as to that residence is often still more obscure, both are sometimes to be gathered from slight circumstances of mere presumption and from equivocal and conflicting acts."

In Hindman's Appeal, 85 Penna. St., 468, it is said: "It was said in Abington *v.* North Bridgewater, 23 Pickering, 170 *supra*, 'it depends not upon proving particular facts, but whether all the facts and circumstances taken together tending to show that a man has his home or domicile in one place overbalance all the like proofs tending to establish it in another.' Applying this rule, which we believe to be a correct one, we think all the facts and circumstances proved clearly preponderate in favor of his domicile in Pennsylvania."

In Carey's Appeal, 25 Smith, 201, GORDON, J., says: " Now applying these principles to the testator's case, and we find not one circumstance either of fact or law wanting to fix his domicile in Rhode Island. He resided there not only long enough for this purpose, but also for that of citizenship. It was the only place in the world where he had a permanent home. There was the abode of his family. In that most solemn instrument that man can set his hand to, his last will and testament, he describes himself as a citizen of that State; it is there he pays taxes and there he votes. A more perfect combination of fact and intention is not conceivable. From whatever standpoint we view this residence we find it labelled domicile in unmistakable characters."

See also Guier *v.* O'Daniel, 1 Binney, 349, n., RUSH, P. J., says: " On a question of domicile the mode of living is not material, whether on rent, at lodgings, or in the house of a friend, the apparent or avowed intention of constant residence, not the manner of it, constitute the domicile."

Five years after the assignment and when the estate was fully settled, on October 27th, 1879, David W. Follweiler, the assignor, confessed a judgment in favor of his father, Jesse Follweiler, for a debt which had been barred by the statute of limitations.

And with such a claim and at such a late day it is attempted to annul what was honestly and innocently done by the assignee and his successor in the trust.

At a sheriff's sale of the property in dispute, upon the

[Follweiler v. Lutz.]

aforesaid judgment, notice was given that Mary Lutz, the defendant in error, claimed this property by virtue of a deed from the assignee. Jesse Follweiler was present at the public sale when Mrs. Lutz purchased. Rebecca Follweiler, wife of Jesse, purchased at the sheriff's sale with full notice of Mrs. Lutz's title from the assignee. We submit that under the authorities Jesse Follweiler, the creditor, misconceived his remedy, and if it be admitted that Mrs. Follweiler had notice of the unrecorded title of Mrs. Lutz, then no title passed to her as purchaser at the sheriff's sale held by virtue of an execution on this judgment. Jesse Follweiler, as a creditor, had his remedy, whilst the estate was in process of settlement, and whilst the property remained unconverted and undistributed, if he intended honestly and fairly to contest the validity of the assignment by reason of the non-recording thereof. After the conversion and distribution of the estate he was too late to enforce his remedy in the manner he now attempts.

On this point we beg leave to cite a few authorities : Stewart v. Minn., 5 W. & S., 103 ; Weaver v. Samuel, 7 Pa. St., 321 ; Seal v. Duffy, 4 Barr, 274 ; Hennesey v. The Western Bank, 6 W. & S., 311 ; Estate of James Burke, 1 Parson, 472.

The opinion of the court was delivered March 1st, 1886.

PER CURIAM.—Residence is determined by a consideration of acts and intention combined : Hindman's Appeal; 85 Pa. St., 466. The evidence shows that the line of separation between the two counties passes through the house occupied by the person who made the voluntary assignment. This fact created doubt as to the county in which he actually resided. Evidence was therefore admissible to show by his acts, declarations and intentions in which county he elected to fix and maintain his residence. The evidence given to establish it was sufficient to submit to the jury, and it was so done in a correct charge.

Judgment affirmed.