FLORENCE MAUDE KING, petitioner and appellant,

*v.*

CHARLES SANFORD KING, defendant and respondent.

[Argued June 18th, 1908.   Decided November 16th, 1908.]

A wife who had been deserted by her husband, came from the State of New York into New Jersey in October, 1904, and filed her petition for divorce here on October 9th, 1907.   She first resided at different places here for the purpose of finding an inexpensive place to live, and finally, but not two years before filing her petition, fixed her residence permanently at Asbury Park.   Her intention when she first came into New Jersey, and thereafter continued, was to make her future home in this state.—*Held*, that her residence in this state from the beginning, coupled with her intention to remain here. gave her a domicile in New Jersey within the meaning of the Divorce act, which requires a two years' residence here during the time for which the desertion continued, and a residence continued down to the filing of the petition.

On appeal from a decree of the court of chancery, reported in *71 Atl. Rep. 687.*

*Mr. Franklin W. Fort,* for the appellant.

The opinion of the court was delivered by

REED, J.

This is an *ex parte* proceeding to procure a divorce on the ground of desertion.   On the coming in of the report of the master advising a decree in favor of the petitioner, the court of chancery dismissed the petition.   The ground of this dismissal was that there was not sufficient evidence that the petitioner had acquired a residence in this state for two years before her petition was filed; that her declaration that she intended to reside in this state was not accompanied with the selection of any place which she adopted as a residence *animo manendi;* that she went

from place to place within the state and selected no one place as a residence until after the two years began to run.

The petition was filed on October 9th, 1907. The petitioner came from New York state where her husband had deserted her, to New Jersey, about October 1st, 1904. She first went to Newark for a few weeks, then to Montclair until June, then to Europe until October, 1905, then to Lakewood for three or four months, then to Newark again and afterwards to Montclair. So she moved from place to place remaining for different periods, until she established a residence at Asbury Park.

The evidence convinces us that she left New York with no intention of returning. It clearly convinces us that she came to New Jersey with the intention of making this state her home. In respect to her migrations after coming here, she says:

"I have gone from place to place in New Jersey for the purpose of seeing which place I would like best before establishing a permanent home. I found it too expensive at Lakewood and at Montclair, and I found Newark and Asbury Park cheaper."

The jurisdictional fact to be established in suits for divorce brought for desertion is that one of the parties shall have been a resident of this state during two years of the time for which the desertion shall have continued, and that such residence shall have continued until the filing of the bill or petition. *P. L. 1902 p. 503.*

It is settled that the word "residence" employed in the statute means domicile, and that to confer jurisdiction upon the courts of this state it is essential that one of the parties shall have been domiciled in this state for the statutory period. *McShane* v. *McShane, 45 N. J. Eq. (18 Stew.) 341.*

Domicile, of course, means a residence in New Jersey, coupled with an intention to remain in New Jersey. It is undenied that, with the exception of a three months' absence in Europe, the petitioner was physically present in this state for about three years before filing her petition. As already observed, the testimony leaves no doubt, in our minds, that she lived here with the intention of making her home in this state.

The view which led to the dismissal of the petition was obviously this: That while the petitioner was a resident here, and intended to remain within the state, she, nevertheless, had no fixed intention of permanently remaining in any one of the places in which she resided, until she finally removed to Asbury Park.

The question of domicile may arise in relation of a person's residence in a country, in a state or municipality. The place of residence may mean the house or home which shelters the persons whose domicile is the subject of inquiry, or it may mean the country or state or subdivision thereof in which the person intends to make his home, and in some part of which he resides.

In moving from one country to another, from one state to another or from one county or town to another county or town in the same state, the person almost universally fixes his new home in some habitation, and the question is whether he did so with the intention of remaining in that habitation. The question, therefore, of his domicile in a particular town, county or state, within which he has taken up his abode, is simply a question whether he has fixed his domicile in his habitation.

But an instance is conceivable where a man who has resolved to change his residence permanently from one city to another, in pursuance of such an intention, has broken up his old home and taken his family to his new home. But he has taken them temporarily to a hotel or a boarding-house until such time as he can secure a suitable dwelling in the new city, or, being unable at the time to get a suitable dwelling, rents an undesirable house until he can procure one more satisfactory in the same city, perhaps in the same street. Now, it is perceived that this man has done, from the first, all that is essential to confer upon him domiciliary rights in the new city. He resided in the city with the intention of making his home there. It is impossible to say that his intention to change from his boarding-house to a private dwelling, or from one dwelling to another, destroyed his domiciliary intent to live in the city, without assenting to the absurd proposition that if he intended to change from one unsatisfactory room in his hotel to a better room when vacated, that fact would also defeat his domiciliary intention.

This is an illustration applicable to a change of municipal domicile.

But the domicile required by the divorce statute seems to be more analogous to what is termed by Mr. Jacobs, in his work on *Domicile,* a *quasi*-national domicile. In speaking of the necessity of residence in a particular place within a country or state as a requisite for the acquisition of domicile therein, Mr. Jacobs remarks:

"It is probably not necessary that in order to work a change in domicile from one state or country to another, the person whose domicile is in question should reach the particular spot within the territorial limits of the latter at which he intends fixing his permanent abode; and indeed it may perhaps be said that it is not absolutely necessary for such purpose that the person should ever have, either in fact or in contemplation, a permanent home within any particular municipal division of such state or country. Such cases must necessarily be rare, but it is possible to conceive of a Frenchman coming to England with the intention of permanently remaining there, but without ever fixing a permanent abode in any particular part of the country. In such case, while it would be doubtless much more difficult to prove the requisite intention than if he had, for example, purchased a dwelling-house, and fixed himself in it in an apparently permanent manner, yet, assuming the requisite intention to be made out by other proofs, there is little doubt that his domicile would be held to be changed." *Jac. Dom.* § *133.*

The same view is held by Mr. Dicey (*Dic. Dom. 56*), and by Lord Jeffrey, as expressed in *Arnott* v. *Groom, 9 D. Sc. Sess. Cas.* (*2d series*) *142, 145.*

We regard these views as sound. Notwithstanding a frequent change of habitation may create a situation, by which the proof of an *animus manendi* becomes difficult, yet, if proved, this, coupled with residence, although migratory, within the territory of the nation or state, equips the resident with a domiciliary status.

So, assuming that this petitioner, while she resided in Newark, Montclair or Lakewood, had no domicile in either of these places, because of the absence of an intention to permanently remain in any one of them, nevertheless, having an intention to remain in New Jersey, and residing in New Jersey, she was domiciled in New Jersey.

The decree below should be reversed.

For affirmance—THE CHANCELLOR, PARKER, GREEN—3.

For reversal—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDEN-BURGH, VROOM, GRAY, DILL—13.