ÆTNA NAT. BANK v. KRAMER.

(Supreme Court, Appellate Division, First Department. January 20, 1911.)

1. DOMICILE (§ 10*)—CHANGE—EVIDENCE.
    While the retention of leased premises until the termination of the lease is entitled to consideration as to the question of intention to effect a change of domicile, it has no cogency in the face of an established change.
    [Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. § 10.*]

2. DOMICILE (§ 4*)—"CHANGE OF DOMICILE."
    To effect a change of domicile there must be an actual change of residence coupled with an intention to abandon the former domicile and to acquire another.
    [Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*
    For other definitions, see Words and Phrases, vol. 2, pp. 1051–1059; vol. 8, p. 7599.]

3. DOMICILE (§ 4*)—CHANGE.
    A person left her former domicile in New Jersey with the intention of abandoning it, and went to reside in New York with the intention of acquiring a domicile there. While the house in which she expected to live was being furnished, she remained temporarily in another house in its locality. Held, that there was both a change of residence and an intention to acquire another domicile.
    [Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*]

    Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by the Ætna National Bank against Catherine. A. Kramer, as executrix of the last will of Etta M. Bower, deceased. From an order denying a motion to vacate an attachment, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Joseph Fettretch, for appellant.
Gervase Green, for respondent.

MILLER, J. This action was brought against the defendant's testatrix, and a warrant of attachment was granted on the 7th day of April, 1910, on the ground that she was a nonresident of the state of New York. The affidavit of nonresidence was to the effect that the affiant knew the said testatrix and her husband, who died on the 10th of March, 1910, and had visited her home in Oradell, N. J., on the 12th and 21st of March, 1910, and that on the 5th day of April, 1910, he had a telephone conversation with the defendant and was informed that the said testatrix still resided at her home in Oradell, N. J. On the motion to vacate the attachment, it was established beyond doubt that the said testatrix and her husband had for some time prior to the death of the latter on the 10th of March, 1910, resided at Oradell, N.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J., and that she continued to reside there after that date until the 3d of April, 1910, when, in company with this defendant, who had for many years been her housekeeper, she left her home in Oradell, N. J., with the intention of taking up her residence with the defendant at the latter's home in Brooklyn, and of abandoning her residence in New Jersey; that, with that intention, on said date, she went to the home of the said defendant's sister, at No. 396 Waverly avenue, Brooklyn, for the purpose of staying there until the defendant's home at No. 1236 Bedford avenue, Brooklyn, should be ready for occupancy; that, on the 6th of April, 1910, at least part of her furniture was moved from her New Jersey home to the said home of the defendant in Brooklyn; that on the 10th of April, the said home being ready for occupancy, the testatrix went there to live with the defendant, and died there on the following day. In opposition to the motion, affidavits of two witnesses were filed to the effect that they saw the testatrix at the railway station at Oradell on the 3d of April, and that she said to them:

"I have a little business to attend to. I expect to be back."

The respondent construes that statement to mean that she was going away on business, expecting to return. In the light of the established facts, I construe it to mean that she expected to return to attend to some business. At any rate, the statement is too equivocal to overcome the established facts. There was also filed in opposition to the motion the affidavit of the testatrix's landlord in Oradell to the effect that the premises, occupied by her, were rented, and the rent paid until April 15, 1910, and that the keys were not surrendered until April 16, 1910. It appears by the moving papers that the testatrix gave the keys on the 3d of April to a neighbor with the request that she deliver them to the landlord; moreover, the retention of the leased premises until the termination of the lease did not preclude a change of domicile. The circumstance is of course entitled to consideration, but it has no cogency in the face of an established change of domicile.

The learned justice at Special Term held that there was no change of domicile until the 10th of April, when the testatrix moved into her permanent home in Brooklyn. No doubt, to effect a change of domicile, there must be an actual change of residence, coupled with an intention to abandon the former domicile and to acquire another. The controlling principles are well settled. For a statement of them, see German Bank v. Edwards, 53 N. Y. 541. On the 3d of April, the testatrix left her former domicile with the intention of abandoning it and went to reside in Brooklyn with the intention of acquiring a domicile there. Thus, there was both a change of residence and an intention to acquire another domicile. While the house in which she expected to live was being furnished, she remained temporarily in another house in the locality. But we do not consider that fact of any importance. When she abandoned her domicile in New Jersey, and went to reside in Brooklyn with the intention of making that her permanent domicile, she acquired a domicile there, and the mere fact that her first residence was a temporary one is of no consequence,

in view of the fact that there was an actual change of residence with the necessary intention of effecting a change of domicile.

The conclusion that the testatrix was in fact a resident of the state of New York on the 7th of April renders it unnecessary to consider the other point argued.

The order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). The appellant presents two points, one of which only is considered in the majority opinion, but, since I dissent from a reversal, it is necessary to consider the other also. It is that the original defendant died within 30 days of the time the warrant of attachment was issued, and inasmuch as personal service was not made upon her or service by publication commenced within that time, the warrant of attachment falls. That contention is based on the provisions of section 638 of the Code of Civil Procedure. After the death of the original defendant a temporary administratrix of her estate was duly appointed and permission of the Surrogate's Court to continue the action against the administratrix was duly obtained, and personal service was made upon her within 30 days of the granting of the warrant of attachment. I am of opinion that this was a full compliance with the requirements of the provisions of said section 638 of the Code of Civil Procedure. See Kelly v. Countryman (opinion of Landon, J., below), 15 Hun, 97; Thacher v. Bancroft, 15 Abb. Prac. 243; More v. Thayer, 10 Barb. 258; Kneeland on Attachments, § 270.

Heretofore the rule followed in this department on appeals from orders granting or denying motions to vacate attachments has been that the determination of the Special Term on a question of residence will not be disturbed, even though the appellate court might have come to a different conclusion, *unless* there is a clear preponderance of evidence against the determination made by the Special Term. Prentiss v. Butler, 59 Hun, 626, 13 N. Y. Supp. 757. I am of opinion that the decision about to be made is a departure from that wise rule which has been deemed necessary to secure the rights intended to be conferred by this provisional remedy. Where the ground of the attachment is nonresidence, of course the burden is on the plaintiff to establish the nonresidence of the defendant at the time the attachment was issued. Ricetti v. Mapleson, 22 Wkly. Dig. 215. The warrant of attachment was issued on the 7th day of April, 1910. The uncontroverted evidence shows that the original defendant Etta M. Bower, on the 3d day of April, 1910, and for some years prior thereto, resided at Oradell, N. J.; that her husband died at Oradell on the 10th day of March, 1910; and that she thereafter expressed an intention of making her home with Mrs. Kramer, the present defendant, and her husband at No. 1236 Bedford avenue, borough of Brooklyn, N. Y. It appears that Mrs. Kramer was employed in the family of the decedent for nine years, and resided with her at Oradell on said 3d day of April. The evidence further shows, I think, that the decedent did not take up a new residence until after the warrant of

attachment was issued. It is true that she left Oradell on said 3d day of April and came to Brooklyn to the home of the sister of Mrs. Kramer where she was taken ill, and for that reason, I think, remained until the 10th day of April, 1910, on which day, for the first time, she went to the home of Mrs. Kramer at No. 1236 Bedford avenue, and there she died the next day. It may well be that on the 10th day of April, 1910, by going to the home of Mrs. Kramer she effected a change of residence, but that could not affect the warrant of attachment issued three days before. It quite clearly appears that when the decedent left Oradell on the 3d day of April she had not given up her residence at that place. She stated to two neighbors that she was merely going away on business and that she intended to return. Moreover, it appears that at that time her furniture, fixtures, and effects were still in the house occupied by her at Oradell, and that she had a lease of the house which did not expire until the 15th day of April, 1910; that after her husband's death she made an agreement with their landlord to lease the premises until said 15th day of April, and paid the rent therefor, and although some of her furniture was moved from the premises on the 6th day of April, 1910, she did not vacate the premises, and her agent refused to surrender the keys or possession of the premises, claiming to be acting under instructions from her, until after her death. It does not appear that all of her furniture, fixtures, and effects were moved on the 6th day of April, or prior to her death. Furthermore it appears that there was a telephone in the decedent's house at Oradell, evidently in the name of her husband or in her name, on the 5th day of April, 1910, and that on that day the defendant, who seeks to vacate this attachment on the ground of a change of residence of the decedent between the 3d and the 7th days of April, 1910, and who was a member of decedent's household at Oradell, answered a call on the telephone at said residence by one Robert Dixon, who made one of the affidavits on which the attachment was issued, and who was intimately acquainted with the decedent and her husband and with the defendant Kramer, and stated to him that the decedent still resided there, but was absent from home on that day and was expected back by the end of the week. The defendant does not deny that Dixon talked with her over the telephone on that day, but she does deny that she informed him that the decedent still resided at Oradell. She does not, however, state what the conversation was, and therefore his evidence should be accepted, and furthermore the fact that she was still living in the house at Oradell tends strongly to support the claim that the decedent had not at that time changed her residence and would likely come back, and I think she would have returned had she not been taken ill.

I am of opinion, therefore, that the determination of the Special Term that the decedent was a nonresident of the state at the time the warrant of attachment was issued is fairly sustained by the evidence, and should not be disturbed.

I therefore dissent from a reversal of the order.