### BLAINE v. MURPHY et al.

(District Court, D. Massachusetts. April 2, 1920. On Application for Rehearing April 28, 1920.)

No. 1161.

1. **Domicile ⬤═4(2)—Intention does not control domicile on erroneous boundary line.**

Where a change in the marking of the state boundary line showed that the sleeping and eating rooms in defendants' residence were in a state other than that in which defendants had considered themselves residents for 40 years, the intention does not control as it does in determining which one of several residences is a domicile, but the domicile is in that state in which the living rooms actually were.

On Application for Rehearing.

2. **States ⬤═13—Re-marking established boundary need not be approved by Congress.**

Where an agreement establishing a boundary between two states had been approved by Congress, as required by Const. art. 1, § 10, cl. 3, subsequent action by a joint commission of the two states re-marking the boundary in accordance with the original agreement need not be approved.

At Law. Action by Grace B. Blaine against Mary E. Murphy and others. On plea in abatement. Judgment for plaintiff on plea in abatement, with leave to answer over, and application for rehearing denied.

Edwin C. Barringer, of Boston, Mass., for plaintiff.
John P. Feeney, of Boston, Mass., for defendants.

MORTON, District Judge. The only ground of jurisdiction is diversity of citizenship, the writ alleging that the plaintiff is a citizen of New York and that the defendants are citizens of Massachusetts. Both defendants have filed pleas in abatement, averring that they are citizens of New York and that there is no diversity of citizenship. The issue was heard by the court by agreement of parties, oral and documentary evidence being introduced.

The facts are unusual and interesting. The defendants are the widow and daughter of Joseph Murphy, deceased, who as early as 1871 was conducting a hotel known as the State Line Hotel, on the border between the towns of West Stockbridge, Mass., and Canaan, N. Y. He died in the early 80's and the defendants have resided at and carried on the hotel ever since. They have no other residence or business.

The family have always regarded themselves as citizens of New York. The various license papers which were required for the hotel were uniformly taken out in that state. Mr. Murphy's will was probated there. In various instruments dealing with land, the defendants are described as residents of Canaan, N. Y. There is an

unbroken series of federal licenses to sell liquor and tobacco, and New York licenses to sell liquor, ending 1916 or 1917, and covering many years, all of which describe the hotel as being in New York and the licensee as a resident in that state. There can be no doubt that the defendants have intended to be and have supposed themselves to be citizens of the state of New York for at least 40 years continuously.

The buildings of the State Line Hotel always stood across the boundary between the two states. There was formerly a bound stone in the highway near one of the front corners of the house; and it was generally understood that the line ran through the building, so as to leave the front veranda and a little of the parlor (with the rooms overhead) in Massachusetts, and the rest of the buildings in New York.

In 1899 commissioners appointed by the two states re-marked— but did not change—the old boundary. See Report of Mass. Commissioners Desmond Fitzgerald et al. to Mass. Legislature dated March 6, 1900, House Doc. No. 1100. This work disclosed that the bound stone referred to, and the supposed line in that vicinity, were about 50 feet east of the true line. The location of the State Line Hotel with reference to the true boundary is shown on a plan accompanying the report referred to. All of the hotel except the rear part of the ell is, and always has been, in Massachusetts. The portion in this state includes all the principal rooms; that in New York state contains a few sleeping rooms in the upper stories, and, on the ground floor, rooms used as a storeroom and as a summer dining room. The toilets are outside structures, and are in New York, and so are the spring from which the water is supplied, the gardens and most of the farm. What proportion in the value of the property lies in each state is not in evidence.

[1] Ordinarily questions of domicile arise where a party has several places of residence, or has removed from one place to another. In such cases intention may be an important factor. The present case is quite different. There is no doubt where the defendants in fact reside; it is in the building known as the State Line Hotel. Nor is there any question as to where, with reference to that building, the boundary between Massachusetts and New York runs; the part of the hotel in which the defendants habitually eat and sleep is in Massachusetts.

The place where a person habitually eats, sleeps, and makes his home is his domicile. If it be clearly and distinctly within a certain state, the person is ipso facto a resident and citizen of that state, regardless of any intention, or rather desire, to the contrary; and the result is not affected by the additional fact that the person can, without leaving the building in which he resides, pass into an adjoining state. The case at bar is fully covered by the opinion of Chief Justice Shaw in Abington v. North Bridgewater, 23 Pick. (Mass.) 170. In Follweiler v. Lutz, 112 Pa. 107, 112 (2 Atl. 721), relied on by the defendants, it is expressly stated by the trial court:

"How the other rooms were used we do not know, nor where David Follweiler ate or slept."

Judgment for the plaintiff on the plea in abatement, but with leave to answer over.

## On Application for Rehearing.

[2] It has been suggested to the court on behalf of the defendants that no act of Congress was ever passed confirming the new marking of the boundary in question; that under the United States Constitution (article 1, § 10, cl. 3) boundary agreements between the states require the "consent of Congress" (see Rhode Island v. Massachusetts, 12 Pet. 657, 725, [8 L. Ed. 816]); that the new location of the line cannot be recognized for lack of such approval; and that a rehearing of the case may be desirable.

The boundary was originally established by commissioners appointed by Congress in 1785. Commissioners' Report of 1900, p. 6. The bound marks then placed appear in many instances not to have been of very permanent character, and became more or less obliterated and forgotten. The work of the commission of 1899 was, not to agree on a new boundary, but to relocate and mark the old one. The report states explicitly:

That "a number of old stone piles found in this vicinity (near the State Line Hotel) agree with the line as now located" (Report, p. 13); and that "the old road stones at this place were found to be about 50 feet east to the true line, which was thus made to pass through the parlor of the hotel, whereas it really crossed the rear portion of the house" (Id. p. 13).

In view of the acceptance of the re-marking by both states as the true location of the line of 1787 (the date of the survey), I do not think that further congressional action was necessary. There was no dispute between the states as to the true boundary; the mere marking of it by bound stones by joint action of the two states was not such an "agreement or compact" (Const. art. 1, § 10, cl. 3) between them as required "the consent of Congress." The true line between the states is, and since 1787 has been, as assumed in the opinion.

There is no occasion for rehearing.