## Wheeler, County Tax Com'r et al. v. Burgess

(Decided Jan. 24, 1936)

As Modified on Denial of Rehearing March 27, 1936

LAWRENCE S. GRAUMAN and STUART E. LAMPE for appellants.

SELLIGMAN, GOLDSMITH, EVERHART & GREENEBAUM for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Mrs. Pauline Ahrens Burgess sought to enjoin Charles C. Wheeler, the tax commissioner, H. Watson Lindsey, the sheriff, and John P. Grieb, the clerk of the county court, all of Jefferson county, Ky., from certifying or reporting certain assesments of intangible personal property made against her as of July 1, 1933, for taxation in 1934. By amendment the taxes for 1935 based on assessment of July 1, 1934, were included, and upon hearing she was awarded the relief she asked, and Wheeler et al. have appealed. This action was begun on May 9, 1934. Mrs. Burgess was then living in Paris, France, but while it was pending she returned to America to live on November 29, 1934.

### Basis of This Action.

The property, the assessment of which caused this litigation, is intangible personal property, the taxable situs of which is at the domicile of the owner, and Mrs. Burgess claims it is exempt from taxation in Jefferson county for the following reasons set forth in her petition.

"Pauline Ahrens Burgess is now, and at all times hereinafter mentioned was, the wife of Robert Burgess, who is employed by and associated in business with the American Radiator-Standard Sanitary Corporation. Before July 1, 1929, said Robert Burgess, together with his wife, the plaintiff, Pauline Ahrens Burgess, and their only child, with the bona fide intention of continuing actually to abide permanently without this State, moved from Louisville, Jefferson County, Kentucky, to the City of Paris, Republic of France, at which place said Robert Burgess and this plaintiff since before July 1, 1929, have resided and been domiciled, and where said Robert Burgess has been, and now is, permanently associated with the business of said American Radiator-Standard Sanitary Corporation, and since said time has been employed at and connected with the Paris office of said Company. At the time of said Robert Burgess' removal to Paris, France, said plaintiff, Pauline Ahrens Burgess, together with her daughter and only child, hereinabove mentioned, accompanied said Robert Burgess to Paris, France, where since said time all of said persons have ac-

tually lived, maintained a home and place of abode, and where said child of said plaintiff since said time has been, and now is, receiving its education. Said actual residence of said plaintiff, Pauline Ahrens Burgess, and her family has at all times been maintained in good faith in Paris, France, and said members of said family of plaintiff, Pauline Ahrens Burgess, have not left said actual residence except for casual business trips about the continent of Europe, and except for holiday visits with acquaintances in the United States of America.''

The trial court, having found these allegations of the petition were established by the proof, found the domicile of Mrs. Burgess to be in Paris, France, and hence awarded her the relief asked.

### Where Was the Domicile of Mrs. Burgess?

Since we have recently discussed the legal phrases of this question, we will simply refer to the discussion in Johnson v. Harvey, 261 Ky. 522, 88 S. W. (2d) 42, and pass on to the facts in this case.

The testimony of Mrs. Burgess was heard, and the substance of it is that she is the wife of Robert Burgess, and that both she and her husband were born in Louisville. Mr. Burgess was in 1928 sent to Europe by the Standard Sanitary Manufacturing Company in charge of its European operations. His first work was to take charge of the construction of a plant in Dusseldorf, Germany, carry it to completion, and put it in operation. How long he should stay was not determined, but it was definitely determined he should stay at least four years. Mr. Burgess took his family with him, and soon leased a house and established a home for them in Dusseldorf, expecting to remain there until he got the plant established and everything working smoothly. In a few months his company merged with the American Radiator Company, and Mr. Burgess was put in charge of the European operations of the merged companies.

This necessitated his removal to Paris, France, and in a few weeks he had leased a large house and established a home with his family in Croissy, a suburb of Paris, and there he remained for six years, spending the winters in a Paris apartment house. In

the meantime, and in preparation for this sojourn, Mr. and Mrs. Burgess had sold some of the furniture they had had in their home on the Upper River road in Jefferson county, had stored some, had taken with them their silverware, linens, personal and bed clothing, and some other small articles, and had leased out their home. Mr. and Mrs. Burgess had a definitely established abode or home in Croissy, a suburb of Paris, with the usual furnishings, servants, etc., but was it their domicile?

In her testimony Mrs. Burgess says this about her sojourn in Europe and about keeping her house on the Upper River road:

"We did not know how long it would last over there and I wanted to go abroad, I thought it would be an interesting experience, and I did not know when we would come back. We kept the Louisville property because we always thought that if we wanted to come back it would be well to have a place to come to, but we did not know when that would be."

Mrs. Burgess came back to Louisville on a visit or two, stopped either with relatives or at a hotel and always with the definite intention of returning to Paris; her home there being in the meantime kept open and ready for her reception. When she had occasion to stop at a hotel, she registered as from Paris, France. She regarded herself as an American citizen residing in Paris, France, which she was, but was she domiciled there?

A person must have a domicile somewhere. See Johnson v. Harvey, 261 Ky. 522, 88 S. W. (2d) 42. A person may have many residences, but can have but one domicile; for example, President Roosevelt has a residence in Warm Springs, Ga., a residence in the White House in Washington, a summer residence at Campobello in the Canadian province of New Brunswick, and a residence at Hyde Park, N. Y., and this last one is his domicile. Mrs. Burgess was born and reared in Louisville, and thus it was her domicile of origin. Her husband was born and reared in Louisville, and thus it was his domicile of origin. Upon the marriage of these two, Mrs. Burgess acquired his domicile by operation of law, which in this case was

the same as her domicile of origin. That is still their domicile unless they acquired a domicile of choice in Paris, France, by their removal to and residence there.

### Did They Acquire a Domicile in France?

The answer to this question depends entirely upon their intention. Were they definitely intending to abandon their domicile in Louisville and to acquire one elsewhere, in Germany, in France, or any other place? If so, they lost their Louisville domicile the moment they reached Germany and established themselves there to stay; that is, with the intention of remaining there during the remainder of their lives, so far as they then knew.

If they ever had that intention, they acquired eo instante a domicile in Germany, and their domicile in Louisville was lost, and in a like manner they lost that German domicile the moment they established themselves in France expecting there to stay.

The intention to stay, to make the new establishment their home for good, is what makes it their domicile. This is what our fathers called animus manendi, the intention of remaining. A person in his lifetime may have many domiciles, one after another, if at each time he relocates himself he does so with the intention of making the new location his permanent home, but he can have but one domicile at a time, and one he must have.

There is nothing in this record to indicate Mr. and Mrs. Burgess ever had any intention of abandoning their Louisville domicile. The evidence indicates they had a definite intention to return after an indefinite stay abroad. Story in his Conflict of Laws, sec. 43, says:

"The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere."

Dicey on Conflict of Laws (2d Ed.) 3 is to same effect.

We must gather their intent from the dominent facts, or as the United States Supreme Court said in National City Bank v. Hotchkiss, 231 U. S. 50, 34, S. Ct. 20, 21, 58 L. Ed. 115:

"Apart from possible exceptions, a man cannot

retain a domicile in one place when he has moved to another, and intends to reside there for the rest of his life, by any wish, declaration, or intent inconsistent with the dominent facts of where he actually lives and what he actually means to do.''

The converse of this is equally true and is applicable here.

Other cases dealing with the question of intent are: Kerby v. Town of Charlestown, 78 N. H. 301, 99 A. 835, L. R. A. 1917D, 785; Dupuy v. Wurtz, 53 N. Y. 556; In re Winsor's Estate, 264 Pa. 552, 107 A. 888; Blaine v. Murphy (D. C.) 265 F. 324; Thayer v. City of Boston, 124 Mass. 132, 26 Am. Rep. 650; Follweiler & Wife v. Lutz, 112 Pa. 107, 2 A. 721; Lyman v. Fiske, 17 Pick. (Mass.) 231, 28 Am. Dec. 293; Marks v. Marks (C. C.) 75 F. 321; Inhabitants of Wilbraham v. Inhabitants of Ludlow, 99 Mass. 587; Winans v. Winans, 205 Mass. 388, 91 N. E. 394, 28 L. R. A. (N. S.) 992; Ætna Nat. Bank v. Kramer, 142 App. Div. 444, 126 N. Y. S. 970; In re Wise's Estate, 165 App. Div. 420, 150 N. Y. S. 782; Chesney v. Francisco, 12 Neb. 626, 12 N. W. 94; King v. King, 74 N. J. Eq. 824, 71 A. 687, 135 Am. St. Rep. 731, 732; McDonald v. Hartford Trust Co., 104 Conn. 169, 132 A. 902; Inhabitants of Gorham v. Inhabitants of Canton, 5 Greenl. (Me.) 266, 17 Am. Dec. 231.

The student will find an interesting article on animus manendi in volume 21, Central Law Journal, p. 430, and interesting discussions of this subject in Berry v. Wilcox, 44 Neb. 82, 62 N. W. 249, 48 Am. St. Rep. 706, Harral v. Harral, 39 N. J. Eq. 279, 51 Am. Rep. 17, and Watkinson v. Watkinson, 68 N. J. Eq. 632, 60 A. 931, 69 L. R. A. 397, 6 Ann. Cas. 326.

Many and interesting are the reported decisions dealing with the question of domicile. There are certain principles that have been conclusively established, among which are: A domicile once acquired continues until a new one is acquired. The burden of showing the acquisition of a new domicile is on the one asserting it. Two things must concur to establish a new domicile, actual physical residence at the new location and the intention of remaining there. So far as residence is concerned, Mrs. Burgess certainly met all requirements, but did she intend to always reside in

France thereafter? After reading her testimony, we cannot think so.

The motive Mr. and Mrs. Burgess may have had in going to Europe is immaterial and unimportant except as it may throw light upon the principal question. Did they then intend to abandon their domicile in Louisville and go to France to stay there for an indefinite time? We use the words "for an indefinite time" in the same sense that the United States Supreme Court defined them in Williamson v. Osenton, 232 U. S. 619, 34 S. Ct. 442, 443, 58 L. Ed. 758, where it said: "We must take them to mean; for a time to which the plaintiff did not then contemplate an end."

Mr. and Mrs. Burgess retained their American citizenship, but that throws no light on the question. Citizenship and domicile are different things; for example, when Eleazer Burbank Newcomb died, he was living in France, was domiciled in Henderson, Ky., and was a citizen of Great Britain, and this court so held. See Newcomb v. Newcomb, 108 Ky. 582, 57 S. W. 2, 22 Ky. Law Rep. 286, 51 L. R. A. 419.

We must gather the intention of Mr. and Mrs. Burgess from what they have said and done.

Mr. Burgess did not return to America because his employer had tired of his services but because he and Mrs. Burgess had tired of their residence abroad, and, immediately after obtaining consent for his return, he and his wife began their trek for their Old Kentucky Home. Their return, or their intention then of returning, is unimportant except as their promptness in doing so may throw light on what was their intention when they established their abodes abroad, and the testimony of Mrs. Burgess leaves in our minds an abiding conviction that she and her husband never had any intention when they established these abodes in Europe, or at any time, of making in Europe their permanent home.

In Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, 118, L. R. A. 1917C, 171, we quoted this from Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360:

"If a person has actually removed to another place, with an intention of remaining there for an

indefinite time, and as a place of fixed present domicile; it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period."

That Baker Case was affirmed by the United States Supreme Court. See Baker v. Baker, Eccles & Co., 242 U. S. 394, 37 S. Ct. 152, 61 L. Ed. 386. This court has frequently cited it and it is perfectly sound.

We held in the Baker Case that Baker had lost his domicile of origin in Tennessee and acquired a domicile of choice in Paducah, Ky., by removal to Paducah, engaging in business there until he died, by registering as a voter in Paducah, by voting there, and by not voting in Tennessee after his removal to Kentucky. Each vote he cast and each of his registrations as a voter was a most solemn declaration, he possessed all those qulifications set out in section 145 of the Kentucky Constitution, and that he was not domiciled elsewhere. If Baker were domiciled in Tennessee, then each time he voted in Kentucky, he committed a felony punishable by one to five years' confinement in the penitentiary. Section 20, art. 13, c. 65, Acts 1891-92-93, section 1585, Ky. St.

In the Baker Case we cited the case of Boyd's Ex'r v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481, where we had quoted from the case of Ennis v. Smith et al., 14 How. 400, 423, 14 L. Ed. 472, and we shall again quote a portion of that:

"When there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling, it does change the domicile. The result is, that the place of residence is prima facie the domicil, unless there be some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence in another place."

Mr. and Mrs. Burgess went to Europe, and they established a home in Croissy, near Paris. It is perfectly apparent this was by them intended to be only a temporary home, wherein they expected to abide only so long as business engagements kept Mr. Burgess

in France. There is not in this record even a breath of evidence that either Mr. or Mrs. Burgess ever had at any time the intention to make their establishment at Croissy their principal and permanent residence. Therefore their domicile remained in Louisville.

A person must have a domicile somewhere; hence we held in Saunders v. Flemingsburg, 163 Ky. 680, 174 S. W. 51, that Saunders was domiciled in Flemingsburg, because he was then residing there, and, although he contemplated purchasing a home in the country, he had not. A person cannot, by intention only, acquire a domicile in the land of somewhere.

In Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500, there was a controversy whether the domicile of J. Y. Robinson was in Lincoln county or Garrard county. He had been domiciled in Garrard, but on September 2, 1918, he had moved to Lincoln county and had taken his personal belongings with him, and he died there two years and one day later. There was some evidence he intended to settle himself permanently in Georgia, but he had not.

In Appleton v. Southern Trust Co., 244 Ky. 453, 51 S. W. (2d) 447, T. C. Mason had left his home in Todd county on July 24, 1926. In a suit filed July 26, 1926, a summons for Mason was issued to Todd county, and attachments were issued and levied on his property. The trial court discharged those attachments, upon the idea that T. C. Mason was then known to be a nonresident, but this court held otherwise.

In Montgomery v. City of Lebanon, 111 Ky. 646, 64 S. W. 509, 23 Ky. Law Rep. 891, 54 L. R. A. 914, we held Montgomery was domiciled on his farm, although he and his family were then temporarily ensconced within the city of Lebanon for the purpose of getting the benefit of the city schools. A similar state of facts with similar result may be found in City of Winchester v. Van Meter, 158 Ky. 31, 164 S. W. 323.

During the eleven years he lived in Paducah, before he died, Baker maychance, from time to time would dream perhaps that maybe he might possibly return to Tennessee some day, but he did not. Death may have put an end to three years of similar dreams by Boyd of returning to Texas, but he did not. Those

are pipe dreams or floating intentions. The evidence before us depicts Mr. and Mrs. Burgess as forceful characters, as people who do things, and it shows they had the fixed intention that, as soon as Mr. Burgess had finished the work that had taken him to Europe, they would return to Louisville, and they did.

Judgment reversed for consistent proceedings.

Whole court sitting.