Robert Edward JOHNSON, Jr., Respondent,

v.

W. M. GRACE CONSTRUCTION COMPANY, INC., Employer, and the Western Casualty and Surety Company, Insurer, Appellants.

No. KCD 27766.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

George G. Allen, Jr., Kansas City, for appellants; Niewald, Risjord & Waldeck, Kansas City, of counsel.

James S. Formby, Kansas City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J. and WASSERSTROM, J.

PRITCHARD, Chief Judge.

The Industrial Commission on review modified a workmen's compensation referee's award of 5.5 weeks permanent partial disability at $65 per week, totalling $357.50, to 40 weeks at $65 per week, totalling $2,600, the latter award being affirmed on review by the trial court.

Appellants' Point I is: "The Court Erred in Modifying the Referee's Award Because the Respondent's Examining Physician, Dr. Szabados, Failed to Establish an Opinion Based upon Reasonable Medical Certainty That the Injuries Which He Enumerated Resulted in any Permanent Disability." It is not clear what is meant by the point, but it is more specifically developed in the argument portion of the brief that the testimony of Dr. Ernest Szabados "is contradictory, inconsistent and self-destructive, lacking in any probative value, and clearly based upon surmise and speculation, and fails to meet the burden imposed upon claimant to support the amendment to the award." The real thrust of appellants' argument is that Dr. Szabados saw respondent one time, October 12, 1973, when the accident happened on February 29, 1972, and during his single examination, as he conceded, he found no *objective* signs of the injuries claimed. It does not appear whether Dr. Szabados' examination was done solely for the purpose of testifying. The testimony of Dr. Szabados which the Commission found should have been considered by the referee is this: "Q (By Mr. Formby) Considering your examination, and the subjective complaints and subjective findings and negative findings on objective testing, did you arrive at a diagnosis? MR. ALLEN: Same objection. [That there were no objective findings] THE WITNESS: My opinion as a result of my findings is that this man directly as a result of the industrial accident, February 29, 1972, incurred a cerebral concussion, multiple abraded contused wounds, and a crush injury of the right forefoot. Soft tissue injuries were also incurred implicating the neck, back, and shoulder girdle, the precise nature of which is not determinable at this time. I also concluded that inasmuch as he continues to have symptoms pertaining to the neck, back, left upper extremity, and the right foot, after one and one half years, *one can with reasonable medical certainty* assume that he will continue to have these diverse muscular skeletal symptoms *indefinitely* inasmuch as an element of *chronicity* has become established. Q (By Mr. Formby) Doctor, did

you arrive at opinion concerning this man's industrial disability as a result of his injuries? A I did. Q What was that opinion? A I gave him a 20 per cent disability rating to the body as a whole." (Italics added.)

Whatever the rule may be in other jurisdictions (cf. 31 Am.Jur.2d, Expert and Opinion Evidence, § 108, p. 634, et seq.) in this state, " 'A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints'." *Schears v. Missouri Pacific Railroad Company*, 355 S.W.2d 314, 317[1] (Mo. banc 1962), and cases and authority cited. See also Anno. Medical Expert-Opinion-Admissibility, 51 A.L.R.2d 1051, and particularly the Missouri cases collected at § 7, p. 1078, et seq. thereof. What is clearly inferable here, from the nature of the question put to Dr. Szabados as to what his diagnosis and opinion were based upon his subjective findings, is that respondent told him at the time of the examination what his complaints and symptoms were. This is precisely the meaning of "subjective symptoms." *Coleman v. Hercules Powder Company*, 284 S.W.2d 32, 38 (Mo.App.1955).

Examining Dr. Szabados' testimony relating to his subjective findings, there is found these matters: "I next hyperextended his trunk with him lying flat. Having raised his head and shoulders up, I raised his legs up off the table. He was able to hyperextend his trunk like this paper (indicating) showing the convexity toward the floor and there is no protective muscle spasm evoked with this maneuver active or passive. However, ill-defined discomfort accompanied the passive—correction, I mean active maneuver when he raised up himself, there was ill-defined discomfort indicated in the lower lumbar area which is across the waistline level." On cross-examination: "Q He didn't complain to you of any pain, is that right? A With hyperextension of the trunk, he had pain in his back * * * Q No protective muscle guarding was provoked—apparently he did, on active maneu-

vers, you said, I think, have some ill-defined discomfort in the lower lumbar area? A Yes. Q That is what we would refer to as a subjective complaint? A Yes."

Respondent's brother observed him after he had been taken to a hospital after the accident (there was a concrete block wall 22 feet high and 33 feet wide which fell upon respondent). The brother testified that respondent had a block print in the middle of his back, "It was all, instead of being like cement form, it was all a blood clot, just one solid blood clot, little red dots and it was just solid like someone had drawn a block on his back." Dr. Szabados was asked (redirect examination by Mr. Formby): "Q Doctor, just a few short questions. Would the presence of numerous bruises and abrasions on and about the body and the back and extremities of Mr. Johnson immediately following this accident and while he was in the Emergency Room at the hospital and the clear imprint of a concrete block on his back be any indication of whether he had sustained soft tissue injury or not? A It would. Q In the absence of positive x-ray findings? A It would." This testimony with that of the subjective findings of Dr. Szabados certainly is sufficiently substantial to support his opinion, above set forth, and the finding of the Industrial Commission.

Dr. Szabados stated his opinion with "reasonable medical certainty" that respondent would have the diverse muscular skeletal symptoms *indefinitely* inasmuch as an element of *chronicity* had become established. Appellants say, "In order to determine that the employee sustained permanent partial disability of the body as a whole it must be assumed that Dr. Szabados by the use of the words *indefinitely* and *chronicity* meant to infer permanency." The above testimony relating to the concrete block imprint upon respondent's back supports the conclusion that there was some kind of soft tissue injury evidenced by the element of chronicity (i. e., one and one-half years of symptoms). "Chronic" or "chronicity" means "Continuing for a long time; of a disease, of long duration, or characterized by slowly progressing symptoms." Webster's New International Dictionary, Second Edition. The word "indefinitely" although not precisely synonymous with "permanently" according to Webster's dictionary, must be taken in context with Dr. Szabados' use of the word "chronicity." In so doing it must be held that he meant that respondent's partial disability was permanent. See *Hughes v. Prudential Ins. Co.*, 179 S.W.2d 630, 638[13, 14] (Mo.App.1944), where it was conversely said, "The phrase 'permanently disabled' is not to be narrowly construed, but means a condition that appears to be reasonably certain or likely to continue permanently *or indefinitely*. (Citing cases.)" (Italics added.) See also *Commonwealth Life Ins. Co. v. Ovesen*, 257 Ky. 622, 78 S.W.2d 745, 746[3, 4] (1935); and *Wheeler v. Burgess*, 263 Ky. 693, 93 S.W.2d 351, 354 (1936), where the court said, "We use the words 'for an indefinite time' in the same sense that the United States Supreme Court defined them in *Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442, 443, 58 L.Ed. 758, where it is said: 'We must take them to mean: for a time to which the plaintiff did not then contemplate an end.'" Here, in the context presented, Dr. Szabados reasonably meant that he did not contemplate an end to respondent's condition.

Appellants' Point II is that as a matter of law there was not sufficient competent evidence to warrant the Industrial Commission's modification of the award. The thrust of the argument is again that the medical opinion was based upon subjective complaints only. That has above been considered, and the point is overruled.

The judgment is affirmed.

All concur.