Estate of Grace Schollmeyer, Incompetent.
Parker F. McMahan, Jr., Conservator, Respondent-Appellant, v. Norval J. Burnside, Petitioner-Appellee, Isabelle E. Shell, Successor-Guardian.

Gen. No. 53,353.

First District, Third Division.

January 29, 1970.

61

Brown, Stine, Cook & Hanson, of Chicago, for appellant.

Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, of Chicago (Joseph A. Spitalli, of counsel), and Bryan, Cave, McPheeters & McRoberts, of St. Louis, Missouri (Jerome M. Rubenstein, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order of the Circuit Court directing Parker McMahan, Jr., Illinois conservator of the estate of Grace Schollmeyer, to deliver the assets of his ward's estate to her brother Norval Burnside, appointed guardian of the person and estate of Grace Schollmeyer by the Probate Court of St. Louis, Missouri. The propriety of that order rests on the adequacy of Burnside's petition filed pursuant to section 264 of the Probate Act (Ill Rev Stats, c 3, § 264 (1967)) and a stipulation of facts upon which the order in question was entered. The act provides as follows:

> "When it appears to the court of any county of this State in which a guardian or conservator of the estate of a non-resident ward is appointed that the removal of the ward's estate will not conflict with the interest of the ward, the terms of limitation attending the right by which the ward owns the estate, or the rights of creditors, the court may order the resident guardian or conservator to pay and deliver to the non-resident guardian or conservator the whole or any part of the ward's estate. . . ."

Respondent-appellant contends that the petition should not have been granted because (1) Grace Schollmeyer, incompetent, was not a "non-resident ward" within the

meaning of the statute under which the petition was filed, and (2) the trial court's finding that the "removal of the ward's estate to Missouri will not conflict with the interest of the ward" is against the manifest weight of the evidence. The relevant facts alleged in the written stipulation are as follows:

Louis and Grace Schollmeyer were married in Chicago in 1962 and made their home there up to the date of these proceedings. They both had lived in the Chicago area throughout their adult lives. Since September 1966 Grace Schollmeyer has manifested symptoms of senility which warranted continuous nursing and custodial care. For some time prior to June 1967 she did not have the mental capacity to determine where she should live. In April 1967 Louis underwent surgery for cancer. This was later diagnosed as terminal and he was readmitted to a Chicago hospital on or about June 12th, where he died on June 25, 1967. The day before he was readmitted to the hospital he had a telephone conversation with his sister who lived in St. Louis and asked her to convey a message to Norval Burnside, his wife's brother, who was also a resident of St. Louis. She told Burnside that Louis had terminal cancer and that he wanted him to find a nursing home for Grace in St. Louis. On the same day Schollmeyer asked Parker McMahan, a longtime friend, whether he would have himself appointed conservator of Grace's person and estate. The following day Burnside informed Schollmeyer that he had found a suitable nursing home, whereupon Schollmeyer asked him to take Grace there as soon as possible. On June 21, 1967, Burnside came to Chicago with a sister Isabelle Shell and they took Grace to St. Louis, where she was admitted to the Regency Nursing Inn on the same day. The day before Grace left Chicago, McMahan filed a petition in the Probate Division of the Circuit Court of Cook County, seeking to be appointed conservator of her person and estate.

Grace was adjudged incompetent and McMahan's petition was granted on July 12, 1967. Shortly thereafter McMahan took custody of the ward's property.

On or about August 30, 1967, Louis Schollmeyer's will was admitted to probate in the Circuit Court of Cook County and McMahan was appointed and is presently acting as executor of that estate. The will contains a trust provision naming McMahan as trustee and Grace Schollmeyer as a beneficiary.

On October 24, 1967, Burnside filed an application in the Probate Court of St. Louis, Missouri, to have himself appointed guardian of the person and estate of Grace Schollmeyer. An order granting his petition was entered on November 13, 1967. Following this, Burnside made application for and has been receiving Social Security payments due the ward.

Burnside then filed his petition in the Illinois Court seeking removal of the assets and McMahan filed an answer and cross-petition for an order directing Burnside to transfer to him the Social Security funds Burnside had been receiving on behalf of Grace. The Circuit Court found that removal of the ward's estate to Missouri would not conflict with her interest or the terms of limitation attending the right by which she owns the estate or the rights of creditors and ordered McMahan to file a final account within sixty days and to pay and deliver the assets of the estate to Burnside as Missouri conservator of the person and estate of Grace Schollmeyer.

McMahan argues that Grace Schollmeyer is not a "nonresident ward" within the meaning of section 264 of the Probate Act, since it is stipulated that prior to June 1967 and to the present date she has not had the mental capacity to determine where she should live and hence her residence could not be changed from Illinois to Missouri. His contention is based on a statement in the

opinion rendered in the case of In re Estate of McCormick, 260 Ill App 36, which reads as follows (p 42):

> "Moreover, it is the established law in this State, as well as in other jurisdictions, that the physical removal of an incompetent adult from place to place does not affect his domicile, residence or citizenship."

The fundamental defect in respondent's argument lies in his assumption that "non-resident" as that term is used in section 264 and "non-domiciliary" are identical terms. While the court in McCormick, supra, did treat "domicile" and "residence" as equivalents, it was not then construing the statute now before us. If it had, we believe a different result would have been reached.

■■ It has long been established that "residence" and "domicile" are not truly convertible terms. See, e. g., Dorsey v. Brigham, 177 Ill 250, 52 NE 303; Hayes v. Hayes, 74 Ill 312; Board of Sup'rs of Tazewell County v. Davenport, 40 Ill 197; Witbeck v. Marshall-Wells Hardware Co., 88 Ill App 101. The term "non-resident" as used in the statute before us has been consistently construed not to have a meaning interchangeable with that of "domicile." In re Estate of Loeffler, 91 Ill App2d 304, 234 NE2d 1; Parcher v. Reese, 202 Ill App 509.

In Loeffler, Rita Jagnow had been appointed conservator of the person of her mother Ellen Loeffler and the Oak Park Trust & Savings Bank had been appointed conservator of the estate, both by the Illinois court. On February 21, 1964, Jagnow took her mother from her Illinois residence to California, where she was placed in a nursing home. The following June the California court appointed Jagnow guardian of the person of her mother and the Bank of America was appointed guardian of the estate. With permission of the California court the Bank

of America filed a petition in the Circuit Court of Cook County for transfer of the assets so that the estate could be administered in California. The petition was denied and the petitioner appealed. It was conceded that the ward did not have the mental capacity to change her domicile herself, but the court held it was not necessary to pass upon the matter of domicile and remanded the cause for a hearing to determine whether the ward had become a resident of California.

In Parcher a person who had been adjudicated insane in Illinois was taken to Missouri by Parcher with the consent of the Illinois conservator and court. Later Parcher was appointed guardian in Missouri and filed a petition in Illinois to recover the insane person's estate. After stating that the term "non-resident" has different meanings according to the subject matter under consideration, the court pointed out that the term sometimes is used to designate the "abiding place" of a person, as distinguished from his "domicile." The court concluded that "non-resident ward" as used in the statute should be construed to mean an insane person who is beyond the jurisdiction of the courts of this State, has been adjudged incompetent by a court of another state and for whose person and estate a guardian or conservator has been appointed by such court.

In the instant case it is clearly established that it was the husband who initiated the move to have his wife taken to St. Louis when he learned he was about to die and that it was he who requested her brother to find a suitable nursing home for her there. When Grace was taken to St. Louis she had not yet been adjudged incompetent although she did not have the mental capacity to determine where she should live. Nowhere does it appear that the decision to move her was based on any motive other than her best interest. It is clear that her re-

moval to St. Louis was not of a temporary or casual character but the result of her dying husband's desire to have a place for her where her relatives were close at hand and could procure for her the care she would require until her death. On November 13, 1967, the Probate Court of St. Louis adjudged her incompetent and appointed Burnside conservator of her person and estate. Since the test laid down in Parcher was therefore satisfied and since it does not appear that the decision to move Grace to St. Louis was motivated by any purpose other than her best interest, we conclude that she is now a "non-resident ward" within the meaning of the statute.

It is conceded by respondent-appellant that the court's finding that removal of the estate will not conflict with the terms of limitation attending the right by which the ward owns the estate or the rights of creditors is correct. He contends however that the finding of the trial court that removal will not conflict with the ward's interest is against the manifest weight of the evidence. We find no substantial evidence supporting that contention. On the contrary, the stipulated facts amply support the trial court's finding.

During the pendency of this appeal the death of Norval Burnside has been suggested and Isabelle Shell, the ward's sister, has been substituted as successor-guardian of her person and estate.

The judgment is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.