*In re* ESTATE OF JOSHUA DANIEL COHN, a Minor.—(NORMAN MARCUS, Petitioner-Appellee, *v.* RUTH M. COHN, Respondent-Appellant.—(STUART COHN *et al.*, Respondents.))

Second District No. 80-690

Opinion filed April 10, 1981.

Stephen M. Flanagan, of Glenview, for appellant.

Murray R. Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellee.

Kathleen C. Swett and Robert M. Bollman, both of Diver, Bollman, Grach and Quade, of Waukegan, guardian *ad litem*.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Petitioner, Norman Marcus, brought a petition to the Circuit Court of Lake County asking that he be named guardian of the estate and person

of Joshua Daniel Cohn. The petition alleged that a guardian was necessary or convenient because the mother had been sentenced to the Illinois penitentiary and the purported father denied paternity. Kathleen C. Swett was appointed guardian *ad litem* and represents the interests of the minor, Joshua Cohn, on this appeal. After a hearing on July 24, 1980, the trial court named petitioner guardian of the person of Joshua Cohn but not of the estate. The mother of the minor, Mrs. Ruth Cohn, appeals from this order.

The respondent-appellant, Ruth M. Cohn, gave birth to Joshua Daniel Cohn on February 24, 1980. At the time of the birth criminal charges of conspiracy to murder her husband and the putative father, Stuart Cohn, were pending against respondent. She has since been convicted, her conviction has been affirmed by this court (see *People v. Cohn* (1980), 91 Ill. App. 3d 209, 414 N.E.2d 543), and she is now serving a six-year sentence at the penitentiary at Dwight, Illinois. This court recently vacated the judgment of dissolution of the marriage of Stuart and Ruth Cohn (*In re Marriage of Cohn* (1981), 94 Ill. App. 3d 732, ___ N.E.2d ___), but the petition for guardianship alleges that the putative father denies paternity and he took no part in the guardianship proceedings.

On June 13, 1980, Norman Marcus brought this petition asking that he be named guardian of the estate and person of the minor. Four days later, the cause was set for hearing on July 31, 1980, but on July 18 the date was changed to July 24. Kathleen C. Swett was appointed guardian *ad litem* on June 17.

We note at this juncture that the guardian *ad litem* was not present at the hearing of Mr. Marcus' petition for guardianship on July 24. Ms. Swett was represented by another attorney from her law firm who explained that she was on vacation. In view of the serious responsibility of the guardian *ad litem* to preserve and secure the rights of the infant (*Roth v. Roth* (1977), 52 Ill. App. 3d 220, 367 N.E.2d 442), we feel constrained to comment on what we consider to be a regrettable lapse in her performance. We think if there was a possibility that the guardian *ad litem* would not be available at the hearing, then another guardian *ad litem* should have been appointed.

At the hearing, the attorney for respondent moved for a continuance which was denied. The trial court found that the 3-day notice requirement of section 11—10.1 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11—10.1) had been complied with by notice sent to the respondent 36 days before the hearing date.

The petitioner testified that he was the brother of Ruth Cohn, that he was born, raised, and educated in Illinois. After graduation from the University of Illinois he served three years in the armed forces and returned to live in Illinois for another two years. In 1964, he joined the

Wilson Sporting Goods firm, representing it overseas, but soon afterwards he became youth director at Rheinmain Air Force Base in Frankfurt, Germany. He returned to Illinois in 1965 where he was employed for two years. In 1968 Mr. Marcus became a career Federal employee. For the next 10 years he served in three overseas locations. In 1978, Mr. Marcus was sent to Fort Bragg, North Carolina, but a year later was transferred back to Germany. He now serves as the recreation services officer in Heidelberg, Germany, where he expects to remain until 1982. He voted in the 1976 presidential election by absentee ballot in Skokie, Illinois.

Mr. Marcus testified that he has been married 16 years to a German citizen and has two children. He also testified that neither he nor his wife had ever been convicted of a crime or been adjudged incompetent. The family lived in a large apartment near Heidelberg and were planning to move to a house. The area of Heidelberg in which they lived was an American enclave with nearby Army medical clinics and American schools. Although he was willing to serve as guardian, Mr. Marcus testified that he intended to return the minor to his mother as soon as she was able to care for him.

Martin and Sylvia Rosenbaum testified that they were the uncle and aunt of respondent and petitioner, that they had had physical custody of Joshua for two months prior to the date of the hearing, that they were 66 and 62 years of age respectively, that they could not care for Joshua on a long-term basis, and that they were not in good health. Both knew Norman Marcus very well and testified that he was an excellent father and that Mrs. Marcus was a wonderful mother. On cross-examination by respondent's attorney, Sylvia Rosenbaum admitted that she knew Ruth Cohn did not want the child to be in Mr. Marcus' care.

After the evidence was presented, Mrs. Cohn's attorney argued that the petition should be denied because it was not brought by a "reputable citizen" of the State of Illinois as required by section 11—5 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 11—5). The trial court found that petitioner was a citizen of Illinois and was qualified to file a petition under section 11—5. He also found that petitioner was qualified to act as guardian of Joshua's person within the meaning of section 11—3(a) of the Act and could take the child wherever he is ordered to go in connection with his employment. But the trial court found that petitioner was unqualified to serve as guardian of the estate because he was not a resident of Illinois as required by that same section. The trial court's order stipulated that Joshua be returned to his mother at the time of her release from prison due to reversal of her conviction or completion of her sentence. Further, any religious instruction of the boy was prohibited, save that of the Jewish faith. Respondent appeals.

At the outset, we note that petitioner, who had previously moved that

this court add *People v. Cohn* to his brief, has now moved to withdraw that motion. We grant the motion to withdraw the first motion.

## I.

The respondent argues that the trial court abused its discretion in refusing to grant her a continuance to allow her to depose the petitioner, to give her time to form pleadings, and to enable her to appear in person and testify. The motion was made on July 24, the date of the hearing and respondent's attorney gave no reason for not moving prior to the hearing date. The trial court, in denying the request, stated that respondent had had ample notice of the proceedings and that an emergency situation existed because the petitioner had to return to Europe and because the Rosenbaums, who were presently caring for the infant, were in poor health.

An appellate tribunal will not interfere with a trial court's exercise of its discretion in the granting or denial of a motion for continuance unless there has been a manifest abuse of the trial court's discretion or a palpable injustice apparent in the record on appeal. (*Economy Fire & Casualty Co. v. Warren* (1979), 71 Ill. App. 3d 625, 390 N.E.2d 361.) If the motion for continuance is made on account of the absence of material evidence, the motion should be supported by affidavit which shall show, *inter alia*, that due diligence has been used to obtain the evidence. (Ill. Rev. Stat. 1979, ch. 110A, par. 231(a).) We think the respondent's motion, coming as it did on the date of the hearing, displayed a lack of due diligence in view of the 36 days notice given her. In deciding as we do, we also consider the trial court's statement that his calendar would not permit of even one day's delay in the proceedings. "Continuances and delays without good cause or sufficient excuse interrupt orderly procedures and throw the entire system out of balance to the detriment of other cases awaiting trial." (*Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 1022, 295 N.E.2d 503, 506.) While ordinarily the right of a parent to be present at a guardianship hearing is of the first magnitude, we must also consider the emergency nature of the proceeding below. Petitioner, the uncle of Joshua, had travelled 6,000 miles to be present on July 24 and was required to return to Germany within a few days. The Rosenbaums were in poor health and unable to continue the care of an active 5-month-old infant for an indefinite period of time. In view of these unusual facts, we are unable to say that the trial court's denial of a continuance was an abuse of discretion. *Economy Fire & Casualty Co.*

## II.

Respondent's next contention is that the trial court lacked subject matter jurisdiction to decide the petition because it was not brought in the

county in which the minor resided as required by section 11—6 of the Act. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—6.) The petition was brought in the Circuit Court of Lake County. The respondent resided in Lake County before she was incarcerated, and the brothers and sisters and the putative father of Joshua reside in Lake County. But the Rosenbaums, with whom the minor had been staying for the two months prior to the hearing, lived in Cook County.

▪▪ We need not decide the question of whether the requirement of section 11—6 is jurisdictional as respondent argues, because we find that Joshua was a resident of Lake County, despite the fact that he had been staying in Cook County. While the term "residence" has no fixed meaning in the law and varies with context and subject matter (*Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 377 N.E.2d 132), it has been held that the word is generally understood to mean more than mere physical presence. Intention and permanence of abode along with physical presence are required to establish "resident" status. *Garrison v. Garrison* (1969), 107 Ill. App. 2d 311, 246 N.E.2d 9.

From the record it appears that Joshua's stay at the Rosenbaums' was only intended to be a temporary arrangement. Both the Rosenbaums testified to their poor health and inability to care for Joshua on a long-term basis. Under these circumstances we find that his residence remained in Lake County where he lived prior to his arrival at the Rosenbaums. See *Country Mutual Insurance Co. v. Watson* (1971), 1 Ill. App. 3d 667, 274 N.E.2d 136 (placement of child in temporary care facility did not effect change in residence); *In re Estate of Schollmeyer* (1970), 120 Ill. App. 2d 61, 256 N.E.2d 73 (incompetent's residence was changed from Illinois to Missouri by direction of her dying husband).

### III.

▪▪ The respondent further argues that the court lacked jurisdiction of the subject matter because the trial court's order failed to make a specific finding that the appointment of a guardian was "necessary or convenient." Section 11—5(a) of the Act provides that upon filing of a petition by a reputable citizen of this State, the court may appoint a guardian of the person of a minor whenever it appears necessary or convenient. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—5(a).) The issue is whether the trial court must make an explicit finding that appointment is "necessary or convenient" before the petition can be granted. We think it need not.

Appellant directs us to *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499, but that case dealt with section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).) The *Harne* court's holding that the statutory findings by the trial court were required was based on an expressed legislative intent to ensure

finality of child custody decrees. Section 11—5 makes no such requirement, and we therefore find that failure to make an explicit finding that the appointment of a guardian is "necessary or convenient" does not deprive the trial court of subject matter jurisdiction.

## IV.

Respondent asserts that the trial court erred in its finding of the meaning of the term "citizen" as it is used in section 11—5(a) and in its finding that petitioner is a citizen of Illinois. The trial court made the statement: "I would dare say, that a citizen is something other than a domiciliary or a resident. My finding is: That the petitioner is a citizen of this State and is qualified to file a petition."

■■ There is a dearth of case law on the subject of the definition of citizenship. It has been held, in the context of Federal diversity jurisdiction, that an averment of residence in a State is insufficient to establish citizenship therein. (*Sun Printing & Publishing Association v. Edwards* (1904), 194 U.S. 377, 48 L. Ed. 1027, 24 S. Ct. 696; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Monaghan* (1892), 140 Ill. 474; *Darst v. Bates* (1869), 51 Ill. 439.) In construing the Illinois Civil Service Act, the Illinois Supreme Court expressly rejected the argument that citizenship was synonymous with residence, stating: "Citizenship is a status or condition and is the result of both act and intent." *State Public Utilities Com. v. Early* (1918), 285 Ill. 469, 473.

The concept of citizenship is more aptly compared with that of domicile. "Citizenship and domicile are substantially synonymous. * * * Citizenship implies more than residence. It carries with it the idea of identification with the state and a participation in its functions. * * * The registration of a man as a voter * * * [is] likewise strong evidence of * * * citizenship * * *." (*Baker v. Keck* (E.D. Ill. 1936), 13 F. Supp. 486, 487.) As one can abandon a domicile by removing to another place with an intention of remaining there for an indefinite time (Story, Conflict of Laws §46 (8th ed. 1883)), so can one renounce citizenship. If a person establishes a domicile in a foreign country, he loses his State citizenship (but not necessarily his United States citizenship, a question not at issue here.) *Alla v. Kornfeld* (N.D. Ill. 1949), 84 F. Supp. 823.

■■ The issue then in the case before us is whether Mr. Marcus established a domicile elsewhere and thereby lost his Illinois citizenship. We are directed to a recent sister State decision. *Dickey v. Bagby* (Ky. 1978), 574 S.W.2d 922, held that a man who was employed by the United States Secret Service and who had spent four years out of the last 13 out of the State had not lost his Kentucky citizenship and was eligible to serve in elective office. The *Dickey* court noted that the appellee had written his will in Kentucky and owned a burial plot there. The court said: "Born and

raised here, his every act manifested his intent to remain a citizen of this state, not merely to return here. His temporary and involuntary absences from Kentucky did not serve to terminate his standing as a citizen." *Dickey*, 574 S.W.2d 922, 923.

We hold that Mr. Marcus did not establish a domicile elsewhere and in that way lose his Illinois citizenship. A key fact is his voting record: although he did not vote in State elections, he did exercise his Federal suffrage via Illinois absentee ballot. It is also vitally important that there is nothing in the record to suggest that Mr. Marcus intended to remain in any of his assigned posts for an indefinite time. (See *Wheeler v. Burgess* (1936), 263 Ky. 693, 93 S.W.2d 351 (defining the intention of remaining for an indefinite time as the intent to remain for the rest of one's life, so far as one knew).) Petitioner testified that each overseas assignment was pursuant to a three-year transportation agreement. Under the *Dickey* rationale, temporary and involuntary transfers do not affect domicile. (*Cf.* Ill. Rev. Stat. 1979, ch. 46, par. 3—2 (elector does not lose residence by reason of absence while on business of United States).) Therefore, the trial court did not err in finding that petitioner was a citizen of Illinois within the meaning of section 11—5 of the Act.

## V.

Finally, it is urged that appointment of petitioner as guardian was an abuse of discretion. We need not discuss this contention at length. The record clearly shows that petitioner met the requirements of section 11—3 of the Probate Act and that he and his family are capable of providing a salutary environment for Joshua. The appointment meets the best-interest-of-the-child standard. *Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 713.

Accordingly, the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.